Citation Nr: 1008504 
Decision Date: 03/08/10 Archive Date: 03/17/10

DOCKET NO. 08-02 804 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical and Regional Office 
Center in Fargo, North Dakota


THE ISSUES

1. Entitlement to an increased rating for dysthymic 
disorder, currently rated 50 percent disabling. 

2. Entitlement to an increased rating for spina bifida 
occulta with discogenic low back pain and lumbosacral strain, 
currently rated 20 percent disabling. 

3. Entitlement to an increased rating for irritable bowel 
syndrome, currently rated 0 percent disabling. 

4. Entitlement to a total disability rating based on 
individual unemployability due to service-connected 
disability (TDIU). 


REPRESENTATION

Appellant represented by: Allan T. Fenley, Attorney at 
law

ATTORNEY FOR THE BOARD

W. Harryman, Counsel


INTRODUCTION

The Veteran had active duty from March 1990 to January 1996. 

This matter comes before the Board of Veterans' Appeals 
(Board) on appeal from an August 2007 decision of the 
Department of Veterans Affairs (VA) Regional Office (RO) in 
Ft. Harrison, Montana. The case was later transferred to the 
RO in Fargo, North Dakota. 

The issues concerning an increased rating for dysthymic 
disorder and a TDIU being remanded are addressed in the 
REMAND portion of the decision below and are REMANDED to the 
Department of Veterans Affairs Regional Office.


FINDINGS OF FACT

1. The Veteran's service-connected spina bifida occulta with 
discogenic low back pain and lumbosacral strain has been 
manifest throughout the appeal period by limitation of 
forward flexion of the thoracolumbar spine to no less than 60 
degrees; ankylosis of the entire thoracolumbar spine has not 
been shown. 

2. Irritable bowel syndrome has been manifest throughout the 
appeal period by not more than mild disturbances of bowel 
function with occasional episodes of abdominal distress. 




CONCLUSIONS OF LAW

1. The criteria are not met for a rating greater than 20 
percent for spina bifida occulta with discogenic low back 
pain and lumbosacral strain. 38 U.S.C.A. §§ 1155, 5107 (West 
2002); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.40, 4.45, 4.59, 
and 4.71a, Code 5242 (2009). 

2. The criteria are not met for a compensable rating for 
irritable bowel syndrome. 38 U.S.C.A. §§ 1155, 5107 (West 
2002); 38 C.F.R. §§ 4.1, 4.2, 4.7, 4.10, 4.114, Code 7319 
(2009). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to notify and to assist

Under the Veterans Claims Assistance Act (VCAA), when VA 
receives a complete or substantially complete application for 
benefits, it must notify the claimant of the information and 
evidence not of record that is necessary to substantiate a 
claim, which information and evidence VA will obtain, and 
which information and evidence the claimant is expected to 
provide. 38 U.S.C.A. § 5103(a) (West 2002). 38 C.F.R. § 
3.159 (2009). See also Pelegrini v. Principi, 18 Vet. App. 
112, 120-21 (2004) (Pelegrini II). 

In the instant case, the Veteran received proper notification 
prior to the initial unfavorable decision in August 2007. 
The RO's January 2007 notice letter advised the Veteran what 
information and evidence was needed to substantiate the 
claims decided herein and what information and evidence must 
be submitted by him, namely, any additional evidence and 
argument concerning the claimed conditions and enough 
information for the RO to request records from the sources 
identified by the Veteran. He was specifically told that it 
was his responsibility to support the claims with appropriate 
evidence. Finally the letter advised him what information 
and evidence would be obtained by VA, namely, records like 
medical records, employment records, and records from other 
Federal agencies. The duty to notify the Veteran was 
satisfied under the circumstances of this case. 38 U.S.C.A. 
§ 5103. 

VA must also make reasonable efforts to assist the appellant 
in obtaining evidence necessary to substantiate the claim for 
the benefit sought, unless no reasonable possibility exists 
that such assistance would aid in substantiating the claims. 
38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2009). 

Service treatment records are associated with claims file. 
Post-service treatment records and reports from various VA 
Medical Centers have also been obtained. A decision from the 
Social Security Administration and the records it considered 
in support of its decision are on file. The Veteran has not 
identified any additional records that should be obtained 
prior to a Board decision. Therefore, VA's duty to further 
assist the Veteran in locating additional records has been 
satisfied. 

The Veteran was afforded a VA examination for his 
gastrointestinal and low back spine disabilities February 
2007. There is no objective evidence indicating that there 
has been a material change in the severity of the Veteran's 
spina bifida occulta or irritable bowel syndrome since he was 
last examined. See 38 C.F.R. § 3.327(a) (2009). The duty to 
assist does not require that a claim be remanded solely 
because of the passage of time since an otherwise adequate 
examination was conducted. VAOPGCPREC 11-95. 

The Veteran's attorney contended generally in the September 
2007 notice of disagreement that VA failed to provide 
adequate medical examinations to assess his disabilities. 
The attorney did not provide any rationale to support that 
argument, however. The Veteran was also afforded a VA 
compensation examination in February 2007 and a VA Gulf War 
examination in August 2007. The Board finds both examination 
reports to be thorough, complete, and adequate upon which to 
base a decision with regard to this claim. The VA examiners 
reported the Veteran's symptoms and current clinical findings 
in detail. They had an opportunity to personally interview 
and examine the Veteran, and their reports provide the 
information necessary to evaluate the Veteran's disabilities 
under the applicable rating criteria. The February 2007 and 
August 2007 examination reports are deemed adequate for 
rating purposes. Barr v. Nicholson, 21 Vet. App. 303, 312 
(2007). 

In light of the foregoing, the Board is satisfied that all 
relevant facts have been adequately developed to the extent 
possible; no further assistance to the Veteran in developing 
the facts pertinent to the issues on appeal is required to 
comply with the duty to assist. 38 U.S.C.A. §§ 5103 and 
5103A; 38 C.F.R. § 3.159. 

II. Law and regulations

Disability ratings are determined by applying the criteria 
set forth in the VA Schedule for Rating Disabilities, found 
in 38 C.F.R., Part 4. The rating schedule is primarily a 
guide in the evaluation of disability resulting from all 
types of diseases and injuries encountered as a result of or 
incident to military service. The ratings are intended to 
compensate, as far as can practicably be determined, the 
average impairment of earning capacity resulting from such 
diseases and injuries and their residual conditions in 
civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 
Where there is a question as to which of two evaluations 
shall be applied, the higher evaluation will be assigned if 
the disability picture more nearly approximates the criteria 
for that rating. 38 C.F.R. § 4.7. 

In considering the severity of a disability, it is essential 
to trace the medical history of the Veteran. 38 C.F.R. §§ 
4.1, 4.2, 4.41. Consideration of the whole-recorded history 
is necessary so that a rating may accurately reflect the 
elements of disability present. 38 C.F.R. § 4.2; Peyton v. 
Derwinski, 1 Vet. App. 282 (1991). Where a veteran appeals 
the denial of a claim for an increased disability rating for 
a disability for which service connection was in effect 
before he filed the claim for increase, the present level of 
the veteran's disability is the primary concern, and past 
medical reports should not be given precedence over current 
medical findings. Francisco v. Brown, 7 Vet. App. 55, 57-58 
(1994). However, where VA's adjudication of the claim for 
increase is lengthy and factual findings show distinct time 
periods where the service-connected disability exhibits 
symptoms which would warrant different ratings, different or 
"staged" ratings may be assigned for such different periods 
of time. Hart v. Mansfield, 21 Vet. App. 505, 509-510 
(2007). 

The assignment of a particular diagnostic code is 
"completely dependent on the facts of a particular case." 
Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic 
code may be more appropriate than another based on such 
factors as an individual's relevant medical history, the 
diagnosis and demonstrated symptomatology. Any change in a 
diagnostic code by a VA adjudicator must be specifically 
explained. Pernorio v. Derwinski, 2 Vet. App. 625, 629 
(1992). 

Spina bifida, discogenic low back pain, and lumbosacral 
strain

Disability of the musculoskeletal system is primarily the 
inability, due to damage or infection in the parts of the 
system, to perform the normal working movements of the body 
with normal excursion, strength, speed, coordination, and 
endurance. It is essential that the examination on which 
ratings are based adequately portray the anatomical damage 
and the functional loss with respect to all of these 
elements. In evaluating disabilities of the musculoskeletal 
system, it is necessary to consider, along with the schedular 
criteria, functional loss due to flare-ups of pain, 
fatigability, incoordination, pain on movement, and weakness. 
DeLuca v. Brown, 8 Vet. App. 202 (1995). The functional loss 
may be due to absence of part, or all, of the necessary 
bones, joints and muscles, or associated innervations, or 
other pathology and evidenced by visible behavior of the 
claimant undertaking the motion. Weakness is as important as 
limitation of motion, and a part that becomes painful on use 
must be regarded as seriously disabled. 38 C.F.R. § 4.40. 
Pain on movement, swelling, deformity or atrophy of disuse as 
well as instability of station, disturbance of locomotion, 
interference with sitting, standing and weight bearing are 
relevant considerations for determination of joint 
disabilities. 38 C.F.R. § 4.45. Painful, unstable, or 
misaligned joints due to a healed injury are entitled to at 
least the minimal compensable rating for the joint. 38 
C.F.R. § 4.59. 



Under the General Rating Formula for Diseases and Injuries of 
the Spine, which applies to disabilities rated under Code 
5242 (degenerative arthritis of the spine), a 40 percent 
rating requires limitation of forward flexion of the 
thoracolumbar spine to 30 degrees or less, or favorable 
ankylosis of the entire thoracolumbar spine. 

Note (1) to Diagnostic Code 5242 advises to evaluate any 
associated objective neurologic abnormalities, including, but 
not limited to, bowel or bladder impairment, separately under 
an appropriate diagnostic code. 

Note (5) states that, for VA compensation purposes, 
unfavorable ankylosis is a condition in which the entire 
cervical spine, the entire thoracolumbar spine, or the entire 
spine is fixed in flexion or extension, and the ankylosis 
results in one or more of the following: difficulty walking 
because of a limited line of vision; restricted opening of 
the mouth and chewing; breathing limited to diaphragmatic 
respiration; gastrointestinal symptoms due to pressure of the 
costal margin on the abdomen; dyspnea or dysphagia; 
atlantoaxial or cervical subluxation or dislocation; or 
neurologic symptoms due to nerve root stretching. Fixation 
of a spinal segment in neutral position (zero degrees) always 
represents favorable ankylosis. 

In addition, the Formula for Rating Intervertebral Disc 
Syndrome (IVDS) Based on Incapacitating Episodes, is 
applicable to the Veteran's degenerative disc disease of the 
cervical and lumbar spine, rated under Code 5243. Under that 
formula, a percent disability rating for IVDS with 
incapacitating episodes is warranted when the total duration 
of at least one week but less than 2 weeks during the past 
12 months; a 20 percent disability rating for IVDS with 
incapacitating episodes is warranted when the total duration 
of at least 2 weeks but less than 4 weeks during the past 12 
months; a 40 percent disability rating for IVDS with 
incapacitating episodes is warranted when the total duration 
of at least 4 weeks but less than 6 weeks during the past 12 
months; and a 60 percent disability rating for IVDS with 
incapacitating episodes is warranted when the total duration 
is at least 6 weeks during the past 12 months. 

Note (1) to Diagnostic Code 5243 provides that, for purposes 
of ratings under Code 5243, an incapacitating episode is a 
period of acute signs and symptoms due to intervertebral disc 
syndrome that requires bed rest prescribed by a physician and 
treatment by a physician. 

Note (2) provides that, if IVDS is present in more than one 
spinal segment, provided that the effects in each spinal 
segment are clearly distinct, each segment is to be rated on 
the basis of incapacitating episodes or under the General 
Rating Formula for Diseases and Injuries of the Spine, 
whichever method results in a higher evaluation for that 
segment. 

Irritable bowel syndrome

A zero percent rating is assigned for mild disturbances of 
bowel function with occasional episodes of abdominal 
distress. Moderate disability due to irritable bowel 
syndrome manifested by frequent episodes of bowel disturbance 
with abdominal distress warrants a 10 percent disability 
rating. A 30 percent rating for irritable bowel syndrome 
requires severe disability manifested by diarrhea or 
alternating diarrhea and constipation with more or less 
constant abdominal distress. 38 C.F.R. § 4.114, Code 7319. 

III. Analysis

Spina bifida, discogenic low back pain, and lumbosacral 
strain

In January 2007, the Veteran's attorney wrote that the 
Veteran was seeking an increased rating in his service-
connected disabilities, indicating that each of the 
disabilities had become more severe. A 20 percent rating is 
currently in effect for the Veteran's service-connected low 
back disability. 

VA clinic records dated from May 2006 through March 2009 
reflect the Veteran's periodic complaints of chronic low back 
pain. One note in November 2007 indicates that he underwent 
an epidural block in October 2007, and that his low back pain 
had subsequently shown significant improvement, although the 
pain had recently started increasing again. 

A VA compensation examiner in February 2007 noted the 
Veteran's complaint that "my whole spine seems to hurt" and 
that "my whole spine feels like something is grabbing 
(spine) and twisting it," with the pain intensity varying 
from 7-10/10. the Veteran indicated that the pain was worse 
with heavy lifting, walking, and working, and was helped by 
hot baths, heating pad, massage, sports cremes, and 
stretching. He denied any other pain or radiation, 
paresthesia, weakness, bowel or bladder complaints. 

The examiner stated that the Veteran could not relate any 
changes of pain or other symptoms over the previous several 
years. The Veteran stated that he would get "used to [the 
pain] after awhile" and that "I really don't pay that much 
attention to it anymore." He indicated that he would use a 
cane whenever he would leave the house, typically once a day, 
and that he could walk 2-3 blocks. The Veteran stated that 
he could manage his activities of daily living and normal 
household duties, but could not work, since he couldn't do 
any heavy lifting or walk long distances. On examination, 
there was no spinal deformity or asymmetry, muscle spasm, 
tenderness to palpation, heat, redness, or swelling. There 
was no evidence of abnormal weight-bearing. The examiner 
indicated that inspection of the tip of the Veteran's cane 
revealed almost no wear. Tested range of motion of the 
thoracolumbar spine revealed forward flexion to 30 degrees, 
extension to 30 degrees, lateral flexion to 20 degrees 
bilaterally, and lateral rotation to 30 degrees bilaterally. 
The Veteran reported that pain began at the stated limits of 
range of motion. The examiner noted that, while sitting in 
the examination room and other topics were being discussed, 
the Veteran was noted to spontaneously flex forward as much 
as 90 degrees without apparent pain or difficulty. There was 
no evidence of increased pain, fatigue, weakness, lack of 
endurance, or incoordination on repeated use, and no change 
in range of motion. The examiner stated that there was no 
objective or clinical evidence of additional limitation due 
to claimed flare-ups beyond the measured and reported ranges. 

The Veteran reported to an August 2007 VA compensation 
examiner that he had generalized muscle pain "from my feet 
to the top of my head" since his separation from service. 
He indicated that he could not work because of the pain and 
because he had difficulty sitting/standing more than 30-60 
minutes or walking more than a couple blocks. The Veteran 
reported that he had had no specific evaluations or 
treatment. No lower extremity neurological complaints were 
voiced. The examiner noted only that range of motion testing 
was without pain or crepitation. She stated, however, that 
the Veteran was able to squat to the ground and could duck 
walk and recover. No abnormal neurological clinical findings 
were recorded. The examiner indicated that she found no 
objective evidence of low back pain, lumbosacral strain, or 
any sequelae of spina bifida occulta. There were no clinical 
findings to support the Veteran's claim of severe and unusual 
daily low back pain and bilateral lower extremity symptoms. 
The examiner stated that she found no objective findings that 
would indicate that the Veteran was disabled by low back 
pain, that he was unemployable, or that his low back 
disability had become more severe over time. She further 
commented that the Veteran's subjective history was vague and 
inconsistent, and on multiple occasions during the interview 
and examination that his response changed when a question was 
repeated later. 

At the time of an October 2008 VA compensation examination, 
the Veteran again described his low back pain as constant, 
with an intensity of 7/10. He indicated that flares would be 
precipitated by sneezing and lifting, although he could not 
say how much he could lift. The Veteran described the pain 
during a flare as 9/10, with a variable duration. He 
indicated that hydrocodone provided good relief. The Veteran 
denied any associated symptoms of numbness, weakness, bladder 
complaints, bowel complaints due to the low back pain, or 
erectile dysfunction. The examiner stated that the Veteran 
presented with a walking stick in hand, but noted that he was 
able to walk safely without the benefit of the cane. The 
Veteran reported that he could walk two blocks, and could 
stand for 15 minutes, sit 20 minutes; he denied any problem 
with balance or frequent falls. The examiner noted that 
there was no report of any incapacitating events in the 
previous 12 months. 

The examiner indicated that the Veteran presented leaning 
heavily on a walking stick, although during the examination 
his gait was even, his posture was erect, and his ambulation 
balance was steady. The Veteran was able to sit comfortably 
during the 30 minute examination, with few position changes 
for comfort. The examiner stated that range of motion 
measurements failed to match the known pathology. The 
Veteran demonstrated forward flexion to 30 degrees, but he 
was later able to bend over to put on his socks. The 
examiner also noted that seated straight leg raise testing 
yielded no complaints of pain. She indicated that, based on 
that information, she estimated the Veteran's true forward 
flexion to be 65-70 degrees at a minimum, extension to 30 
degrees with pain, left lateral flexion to 30 degrees without 
pain, right lateral flexion to 25 degrees with pain, and 
lateral rotation to 30 degrees bilaterally without pain. The 
examiner stated that range of motion was partially limited by 
complaints of pain, but that there was no objective evidence 
of fatigue, spasms, weakness, or lack of endurance following 
repetitive use. She indicated that complaints of fatigue, 
weakness, and lack of endurance did not limit spine function 
any further than previously documented. There was no 
clinical or objective evidence of additional limitation due 
to claimed flare-ups beyond the measured and reported range. 
The Veteran also complained of localized tenderness on 
palpation of the low back and sacroiliac joints. But there 
was no guarding, and spinal contour was normal. Straight leg 
raise testing was negative. The neurological examination was 
essentially normal. Moreover, the examiner noted that the 
Veteran demonstrated good coordination during heel/toe and 
tandem walking, and was able to stand on one leg (right and 
left) while doing shallow knee bends, all without the use of 
his cane. The examiner's assessment was of mild degenerative 
joint disease and minimal degenerative disc disease of the 
lumbar spine that was unchanged since 2004. 

Because the record shows that the Veteran has not experienced 
any incapacitating episodes due to the low back disability, a 
separate rating under Code 5243 is not warranted. Similarly, 
because no examiner has reported any associated objective 
neurologic abnormalities, including bowel or bladder 
impairment, that are due to the low back disability, a 
separate rating is also not warranted on that basis. 

The Board observes that both the February 2007 and October 
2008 VA compensation examiners initially reported measured 
forward flexion of the thoracolumbar spine to 30 degrees, at 
which point he complained of pain. However, both examiners 
also noted that, during other parts of the interview, the 
Veteran was able to flex much farther without difficulty or 
evidence of pain. Both of those examiners, as well as the 
August 2007 VA examiner, clearly seemed to indicate that the 
observed clinical findings did not support the Veteran's 
claim of severe low back pain. They felt that the amount of 
pain reported by the Veteran was out of proportion to the 
documented pathology. Put another way, all three examiners 
observed the Veteran to be exaggerating his symptoms during 
his physical examinations. He is being disingenuous during 
his examinations. The Board therefore chooses to focus on 
the range of motion findings that were casually observed or 
estimated as the true indication of his level disability.

Because the February 2007 examiner noted that the Veteran was 
observed to flex as much as 90 degrees without pain and 
because the October 2008 examiner estimated the Veteran's 
true forward flexion to at least 65-70 degrees, the Board 
finds that the criteria are not met for a 40 percent rating 
under the provisions of the General Rating Formula. 

In addition, both the February 2007 and October 2008 
examiners stated that there was no objective evidence of 
increased limitation of motion or function on repeated use or 
during flare-ups. Accordingly, no higher rating is warranted 
on that basis. See 38 C.F.R. §§ 4.40, 4.45; see also DeLuca 
v. Brown, 8 Vet. App. 202 (1995). 

For all the foregoing reasons, the claim for an increased 
rating for spina bifida occulta with discogenic low back pain 
and lumbosacral strain must be denied. In reaching this 
conclusion, the Board has considered the applicability of the 
benefit-of-the-doubt doctrine. However, as the preponderance 
of the evidence is against the appellant's claim, that 
doctrine is not applicable in the current appeal. 38 
U.S.C.A. 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 
(1991); Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 

Irritable bowel syndrome

In January 2007, the Veteran's attorney wrote that the 
Veteran was seeking an increased rating in his service-
connected disabilities, indicating that each of the 
disabilities had become more severe. A zero percent rating 
is currently in effect for the service-connected irritable 
bowel syndrome. 

VA clinic records dated from May 2006 through March 2009 are 
generally silent for any complaints referable to irritable 
bowel syndrome. A report in November 2007 noted that the 
Veteran had had some diarrhea on several occasions. However, 
the diarrhea had disappeared after he stopping taking 
Cymbalta, a psychotropic medication. 

The Veteran reported to the February 2007 VA examiner that he 
had constant diarrhea ("loose stools) daily, two to three 
times per day, with occasional urgency. He stated that he 
felt like he may be "leaking" between bowel movements. He 
denied using pads or absorbent pants. The Veteran reported 
that he had epigastric pain lasting seconds three times a 
month or less, but he denied any other abdominal or pelvic 
pain. He denied passing any mucus or blood. The Veteran did 
not indicate that the disability had any effect on his daily 
activities. On examination, bowel sounds were normal. 
Epigastric tenderness was noted, but the abdomen was 
otherwise nontender to palpation and percussion. Rectal 
sphincter tone was normal and the perianal skin was entirely 
normal, with no dermatitis or irritation or other evidence of 
incontinence or chronic diarrhea. The examiner stated that 
she found no objective evidence of irritable bowel syndrome, 
reported diarrhea or associated fecal incontinence. She 
added that, although the Veteran had a history of epigastric 
pain most likely to due his non-service-connected 
gastroesophageal reflux disease (GERD), irritable bowel 
syndrome tends to present with lower abdominal tenderness. 
The examiner stated that she found no objective findings that 
would indicate that the Veteran was disabled by a bowel 
condition, that he was unemployable, or that his bowel 
disability had become more severe over time. 

The August 2007 VA examiner noted that the Veteran denied any 
melena, constipation, or diarrhea. She noted his previous 
diagnosis with GERD, with epigastric pain and treatment with 
Prilosec. On examination, the abdomen was nontender; no 
abnormal clinical findings were noted. The examiner's 
assessment did not include irritable bowel syndrome. 

The October 2008 VA compensation examiner noted that the 
Veteran couldn't say if he had lost any weight. There was no 
reported nausea or vomiting. The Veteran indicated that he 
had intermittent constipation when on narcotics for a long 
period. When asked if he ever had a normal stool, he 
replied, "I guess maybe once a week." He claimed diarrhea, 
but couldn't say how often during the day, noting that it was 
"variable." When asked whether he experienced incontinence 
episodes, he indicated that he did, and when asked how often, 
he couldn't say, maybe five times a month. The Veteran 
denied using pads and denied receiving any treatment for his 
claimed chronic diarrhea. When asked if he ever had 
abdominal pain, distress, or cramps, he replied, 
"sometimes." On examination, there was no evidence of 
malnutrition or other debility. The Veteran weighed 202 
pounds; there was no evidence of weight loss. Bowel sounds 
were not hyperactive. There were no anal fissures, fistulas, 
hemorrhoids, or lesions in the perianal area. Sphincter tone 
was good; the rectal wall was smooth and nontender. The 
examiner noted that, of 255 entries in VA medical records, 
only two referred to diarrhea, and the only two notations of 
irritable bowel syndrome were the last two compensation 
examinations where irritable bowel syndrome was claimed. 

Although the Veteran has claimed that he has chronic 
diarrhea, up to three times per day, there is no evidence 
that he had ever received any treatment for chronic diarrhea. 
Nor is there any medical evidence of residuals of chronic 
diarrhea, such as weight loss or malnutrition. Moreover, 
each of the VA compensation examiners noted that there was no 
clinical evidence of any anal irritation, as would be 
expected in the case of chronic diarrhea. Further, the 
Veteran denied any other abdominal complaints, and the 
examiners also noted the absence of lower abdominal 
tenderness, as would be expected in irritable bowel syndrome. 
Indeed, given his proclivity to exaggerate his symptoms 
during his orthopedic examination, the Board has little doubt 
that the Veteran exaggerates his irritable bowel syndrome 
symptoms as well. Simply put, when considering the 
essentially asymptomatic findings of the examinations and 
virtually silent outpatient treatment records, the Board does 
not the Veteran to be truthful in his complaints. 

Accordingly, as suggested by the comments of each of the VA 
compensation examiners, the Board finds the Veteran's reports 
of chronic severe diarrhea not to be credible. There is no 
objective evidence of more than mild disability due to 
irritable bowel syndrome at any time during the appeal period 
as to warrant a 10 percent disability rating. 

For all the foregoing reasons, the claim for an increased 
rating for irritable bowel syndrome must be denied. In 
reaching this conclusion, the Board has considered the 
applicability of the benefit-of-the-doubt doctrine. However, 
as the preponderance of the evidence is against the 
appellant's claim, that doctrine is not applicable in the 
current appeal. 38 U.S.C.A. 5107(b); Gilbert v. Derwinski, 
1 Vet. App. 49 (1991); Alemany v. Brown, 9 Vet. App. 518, 519 
(1996). 

Extraschedular consideration

In denying the claim for higher ratings, the Board also has 
considered whether the veteran is entitled to a greater level 
of compensation on an extra-schedular basis. Ordinarily, the 
VA Schedule will apply unless there are exceptional or 
unusual factors which would render application of the 
schedule impractical. See Fisher v. Principi, 4 Vet. App. 
57, 60 (1993). 

According to the regulation, an extraschedular disability 
rating is warranted based upon a finding that the case 
presents such an exceptional or unusual disability picture 
with such related factors as marked interference with 
employment or frequent periods of hospitalization that would 
render impractical the application of the regular schedular 
standards. See 38 C.F.R. § 3.321(b)(1) (2009). An 
exceptional case is said to include such factors as marked 
interference with employment or frequent periods of 
hospitalization as to render impracticable the application of 
the regular schedular standards. See Fanning v. Brown, 4 
Vet. App. 225, 229 (1993). 

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-
step inquiry for determining whether a veteran is entitled to 
an extraschedular rating. First, the Board must first 
determine whether the evidence presents such an exceptional 
disability picture that the available schedular evaluations 
for that service-connected disability are inadequate. 
Second, if the schedular evaluation does not contemplate the 
claimant's level of disability and symptomatology and is 
found inadequate, the Board must determine whether the 
claimant's disability picture exhibits other related factors 
such as those provided by the regulation as "governing 
norms." Third, if the rating schedule is inadequate to 
evaluate a veteran's disability picture and that picture has 
attendant thereto related factors such as marked interference 
with employment or frequent periods of hospitalization, then 
the case must be referred to the Under Secretary for Benefits 
or the Director of the Compensation and Pension Service to 
determine whether, to accord justice, the Veteran's 
disability picture requires the assignment of an 
extraschedular rating. 

With respect to the first prong of Thun, the evidence in this 
case does not show such an exceptional disability picture 
that the available schedular evaluation for the service-
connected low back disability or irritable bowel syndrome is 
inadequate. A comparison between the level of severity and 
symptomatology of the Veteran's low back disability and 
irritable bowel syndrome with the established criteria found 
in the rating schedule shows that the rating criteria 
reasonably describe the Veteran's disability level and 
symptomatology. 

The Board further observes that, even if the available 
schedular evaluation for the disability is inadequate (which 
it manifestly is not), the Veteran does not exhibit other 
related factors such as those provided by the regulation as 
"governing norms." The record does not show that the 
Veteran has required frequent hospitalizations for his back 
or bowel disabilities. Indeed, it does not appear from the 
record that he has been hospitalized at all for those 
disabilities. Additionally, there is not shown to be 
evidence of marked interference with employment due to those 
disabilities. The record does show that the Veteran has been 
found to be totally disabled by the Social Security 
Administration (SSA), due to the effects of chronic pain 
syndrome, status post right shoulder rotator cuff repair, 
bipolar disorder, a generalized anxiety disorder, and 
posttraumatic stress disorder. The SSA decision notes, 
however, that the Veteran's mental condition appeared to be 
the source of his most serious and debilitating limitations. 
There is nothing in the record which suggests that the 
disabilities of the low back and bowel in and of themselves 
markedly impacted his ability to perform his job. Moreover, 
there is no evidence in the medical records of an exceptional 
or unusual clinical picture.


In short, there is nothing in the record to indicate that the 
service-connected disabilities on appeal cause impairment 
with employment over and above that which is contemplated in 
the assigned schedular ratings. See Van Hoose v. Brown, 4 
Vet. App. 361, 363 (1993) [noting that the disability rating 
itself is recognition that industrial capabilities are 
impaired]. The Board therefore has determined that referral 
of this case for extra-schedular consideration pursuant to 38 
C.F.R. 3.321(b)(1) is not warranted. 


ORDER

An increased rating for spina bifida occulta, currently rated 
20 percent disabling, is denied. 

An increased rating for irritable bowel syndrome, currently 
rated 0 percent disabling, is denied. 


REMAND

In October 2008, the Veteran was afforded a VA compensation 
examination regarding his service-connected dysthymic 
disorder. That examiner, who had previously examined the 
Veteran for VA compensation purposes in September 2006 and 
January 2007, noted that there "appear[s] to be a number of 
different diagnoses suggested by different examining and 
treating sources," including bipolar II disorder, 
posttraumatic stress disorder (PTSD), and generalized anxiety 
disorder. The examiner indicated that those diagnoses did 
not appear to be supported by current signs and symptoms. He 
noted, however, that the Veteran had significant 
medical/physical complaints and that it was difficult to 
ascertain the degree to which his daily functioning was 
limited based solely on psychological factors. The examiner 
stated that the Veteran presented with a complex clinical 
picture and that, given the complexities of his complaints, 
as well as some conflict in the records, he suggested that an 
examination be conducted by a board of three examiners to 
resolve these conflicts. The examiner noted that the Veteran 
concurred with the suggestion and agreed to comply with 
another examination. 

The record indicates that a psychiatric examination by a 
board of three examiners was scheduled in June 2009. 
However, the Veteran canceled the examination, requesting 
that the location be transferred; he had apparently moved 
from Montana to North Dakota. In July 2009, the Veteran's 
file was transferred to the Fargo, North Dakota, RO, with the 
notation that an examination was needed. The record does not 
reflect that an examination by a board of three examiners has 
been rescheduled. 

In light of the statements by the October 2008 VA examiner, 
the Board finds that VA's duty to assist requires that 
another examination be scheduled. See 38 C.F.R. 
§ 3.159(c)(4) (2009). 

The Court has held that when a determination on one issue 
could have a significant impact on the outcome of another 
issue, such issues are considered inextricably intertwined 
and VA is required to decide those issues together. Harris 
v. Derwinski, 1 Vet. App. 180 (1991). The claim of 
entitlement to a TDIU requires consideration of the effect on 
employability of all service-connected disabilities. The 
determination regarding the remanded issue of entitlement to 
an increased rating for the Veteran's service-connected 
dysthymic disorder could impact the Veteran's TDIU claim. 
See also Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). The 
Board therefore finds these issues to be inextricably 
intertwined. 

Accordingly, the case is REMANDED for the following actions:

1. Schedule the Veteran for a 
psychiatric examination by a board of 
three examiners. The claims file, 
including a copy of this remand, must be 
reviewed by the examiners in conjunction 
with their examination. All testing 
found to be necessary by the examiners 
should be completed. The examiners' 
report should set forth in detail all 
current psychiatric symptoms, clinical 
findings, and diagnoses. Ask the 
examiners to provide the following 
medical opinions:

a. For any diagnosis other than 
dysthymic disorder (for which 
service connection has been 
established), indicate whether that 
diagnosis represents a progression 
of the prior diagnosis, a correction 
of an error in the prior diagnosis, 
or the development a new and 
separate condition. 

b. For any disorder which is felt 
to constitute a new and separate 
condition, indicate the likelihood 
(i.e., 50 percent probability or 
greater) that that disorder is due 
to service or to a service-connected 
disability. 

c. Describe the effects that the 
service-connected psychiatric 
disability(ies) have on the 
Veteran's daily activities and on 
his ability to work. 

All opinions should be supported by 
adequate rationale. 

2. Upon completion of the requested 
development, again consider the Veteran's 
claims for an increased rating for his 
dysthymic disorder and for a TDIU. If 
the claims are not granted to his 
satisfaction, furnish the Veteran and his 
attorney with a supplemental statement of 
the case (SSOC) and give them an 
opportunity to respond before returning 
the case to the Board. 

The appellant has the right to submit additional evidence and 
argument on the matter or matters the Board has remanded. 
Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law 
requires that all claims that are remanded by the Board of 
Veterans' Appeals or by the United States Court of Appeals 
for Veterans Claims for additional development or other 
appropriate action must be handled in an expeditious manner. 
See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2009).



______________________________________________
MICHAEL A. HERMAN
Acting Veterans Law Judge, Board of Veterans' Appeals


 Department of Veterans Affairs