Michael A. PERNORIO, Jr., Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–779.

United States Court of Veterans Appeals.

Submitted Aug. 8, 1991.

Decided July 24, 1992.

Michael A. Pernorio, Jr., pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Michael A. Leonard, Washington, D.C., were on the pleadings, for appellee.

Before KRAMER, MANKIN, and IVERS, Associate Judges.

IVERS, Associate Judge:

Michael A. Pernorio, Jr., appeals from a June 20, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied him an increased evaluation for his service-connected cystic acne with scrotal nodule. The Court holds that the BVA applied a standard that exceeded that found in the relevant regulation in order to support its conclusion that the veteran's condition did not warrant an increase; in so doing, the BVA committed legal error. We also find that the BVA did not adequately address evidence of facial scarring and that the Board did not provide adequate reasons or bases under 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) for the use by the Department of Veterans Affairs (formerly Veterans' Administration) (VA) of various diagnostic codes in evaluating the veteran's skin condition. Accordingly, the Court vacates the decision of the BVA and remands the case for readjudication consistent with this opinion.

## FACTUAL BACKGROUND

The veteran served in the United States Navy from 1965 to 1969. R. at 7. He has had a service-connected disability rating of ten percent for cystic acne with scrotal nodule since October 1983. R. at 17. In February 1987, the veteran had a twelve millimeter epidermal cyst removed from his face. R. at 29. A VA Regional Office (VARO) rating decision dated August 18, 1987, shows that in July 1987 Mr. Pernorio submitted a "claim for increase" and that he was considered by the rating board for "[e]val[uation] of cystic acne and [service connection] for [diagnostic codes] 7899, 7817, 6299, 6099." R. at 17. The rating board listed the diagnostic code (DC) under which the veteran's cystic acne with scrotal nodule was evaluated as DC 7819 but included a parenthetical note that the condition was "formerly evaluated under DC 7899–7806". *Id.* Under the section of the rating decision listing the veteran's various non-service-connected ailments, the rating board listed "dermatomycosis" next to DC 7899 (*Id.*); dermatomycosis is "a disease (as ringworm) of the skin caused by an infection with a fungus...." WEBSTER'S

MEDICAL DESK DICTIONARY 173 (1986). The other diagnostic codes with corresponding ailments, for which Mr. Pernorio was evaluated for service connection, were listed on the August 1987 rating decision sheet as follows: DC 7817—dermatitis, ears; DC 6299—hearing loss; and DC 6099—refractive errors (developmental abnormality), eye disorder. R. at 17–18. Under 38 C.F.R. § 4.118, which provides the schedule of ratings for the skin, DC 7819 is for "[n]ew growths, benign, skin" and is followed by the following notation: "Rate as scars, disfigurement, etc. Unless otherwise provided, rate codes 7807 through 7819 as for eczema, dependent upon location, extent, and repugnant or otherwise disabling character of manifestations." 38 C.F.R. § 4.118, DC 7819 (1991). The VARO denied the veteran's request for an increase in his ten-percent evaluation for cystic acne and denied service connection for the other conditions, including DC 7899—dermatomycosis.

In September 1988, the veteran made another claim for an increase in his disability rating from ten percent to thirty percent. R. at 12. Pursuant to this claim, a VA medical examination was administered on December 6, 1988, and the doctor's impression was as follows: "Cystic acne with comedones and papules back and scarring as noted.... Past history of probable sebaceous cyst scrotum removed.... Pilonidal cyst with low grade inflammation." R. at 14. Pilonidal is defined as "containing hair nested in a cyst—used of congenitally anomalous cysts in the sacrococcygeal area [the region of the sacrum and coccyx] that often become infected and discharge through a channel near the anus." WEBSTER'S MEDICAL DESK DICTIONARY 549, 629 (1986). In the examination report, the doctor noted the following:

At present he has been on Tetracycline for about a month. His back is under fair control with some acne lesions. However, he continually gets new acne lesions. Regarding his scrotum, apparently he had some sebaceous cysts removed from his scrotum while on active duty and these have not recurred. He has had intermittent problems with

swelling and drainage in the intergluteal area compatible with pilonidal cyst formation. Presently, he has some tenderness on the right side of his intergluteal cleft....

... There is moderate scarring of the back. There are moderate numbers of papular acne lesions. There are multiple comedones. A few lesions of papular acne over the anterior shoulders. Chest is clear. Face is clear as is the rest of his body from acne lesions.... Exam of the buttocks shows chafing of the intergluteal area. There are two pilonidal cyst sinuses. There is minimal but definite inflammation and induration of the right intergluteal cleft area.

R. at 14. The doctor's descriptive notes also state that the veteran "is on a 10% disability for cystic acne, scrotal nodule...." and that "[w]e are asked to do increase reopen category 7819" (*Id.*), the diagnostic code for "new growths, benign, skin." 38 C.F.R. § 4.118, DC 7819. On January 12, 1989, the VARO denied the veteran's claim for an increase in his rating and confirmed and continued his evaluation at ten percent. R. at 16.

In May 1989, a hearing was held at the VARO in Seattle where the veteran testified that he suffered, inter alia, from constant itching. R. at 25, 28, 31. In addition, the veteran's representative pointed out at the hearing that removal of the twelve millimeter cyst in 1987 had left a scar on the veteran's face. R. at 25. In addition, the representative described the following with regard to the veteran's face:

... lesions and scars on his face down in this area[.] [A]gain on the nose [—] the side of the nose [—] he has the blackheads[,] and again the scars [are] underneath his eyes[,] down the sides of his face[, and] underneath his chin. These are all lesion scars.

R. at 27. The hearing officer affirmed the January 12, 1989, rating decision of the VARO. R. at 31–32. The veteran wrote a letter to the Seattle VARO dated June 4, 1989, in which he informed the VA of his desire to appeal his case to the BVA. R. at 34. The veteran's letter was evidently

deemed a Notice of Disagreement because the record shows that shortly thereafter a Statement of the Case, dated June 30, 1989, was prepared and furnished for Mr. Pernorio. R. at 35–37. Under its PERTINENT LAWS AND REGULATIONS section, the Statement of the Case refers only to DC 7806, the code for eczema. R. at 37. In a May 18, 1990, transcript of oral arguments for presentation to the Board, the veteran's representative described the veteran's disability status as "service connected for Diagnostic Code 7813" (R. at 41), which is for dermatophytosis, "a disease (as athlete's foot) of the skin or skin derivatives (hair or nails) that is caused by a dermatophyte or .fungus." WEBSTER'S MEDICAL DESK DICTIONARY 173 (1986). The Board upheld the ten-percent rating evaluation, citing only DC 7806, the code for eczema. *Michael A. Pernorio*, BVA 90–20541, at 4 (June 20, 1990). The veteran perfected a timely appeal of the decision of the BVA to this Court. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## ANALYSIS

### I. Use of Improper Standard.

■ Under Diagnostic Code 7806, the rating criterion for a ten-percent evaluation is for eczema "[w]ith exfoliation, exudation or itching, if involving an exposed surface or extensive area." 38 C.F.R. § 4.118, Diagnostic Code 7806 (1991). The criterion for a thirty-percent evaluation is for eczema "[w]ith exudation or itching constant, extensive lesions, or marked disfigurement." *Id.* In concluding that the veteran's condition did not warrant an increased rating evaluation, the Board noted in its DISCUSSION AND EVALUATION section as follows:

> On the most recent VA examination, there was moderate scarring of the back with a moderate number of papular acne lesions. There were multiple comedones and a few lesions of papular acne over the shoulder, but the chest and face were described as clear. Under these circumstances, it is our view that the veteran is not markedly disfigured and that the le-

sions are not extensive. While the veteran complains of a constant itching, *there is no indication of excoriation.*

*Pernorio*, BVA 90–20541, at 5 (emphasis added).

Although the criterion for a thirty-percent evaluation is for eczema "[w]ith ... itching constant", the regulation is silent with regard to "excoriation" or any other particular evidence needed to show continual itching. Moreover, in the December 6, 1988, VA examination report, the examiner did not comment on whether the veteran's skin condition caused itching or what the signs of constant itching might be. However, the Board's brief statement implies that constant itching must be shown by excoriation. In using a standard that exceeded that found in the regulation, the Board committed legal error. In addition, the Court notes that the BVA gave short shrift to the veteran's testimony, contrary to this Court's holding in *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169–70 (1991). By stating that "the veteran *complains* of constant itching ..." (*Pernorio*, BVA 90–20541, at 5 (emphasis added)), the Board implies that it viewed the veteran's sworn testimony simply as part of his arguments or contentions rather than as testimonial evidence deserving of an analysis of its credibility or probative value. *Hatlestad*, 1 Vet.App. at 169–70. In light of these errors, we vacate the decision of the Board and remand the case for reevaluation of the veteran's skin condition, especially with regard to itching.

### II. Failure To Address Facial Scarring and To Provide Reasons or Bases for the Use of Various Diagnostic Codes.

■ In its DISCUSSION AND EVALUATION section, the BVA noted that during the December 1988 VA examination Mr. Pernorio's "chest and face were described as clear." *Pernorio*, BVA 90–20541, at 5. The Board then concludes that "[u]nder these circumstances, it is our view that the veteran is not markedly disfigured...." *Id.* The Court notes, however, that the full statement in the VA examination report regarding the veteran's face is that his

"[f]ace is clear as is the rest of his body *from acne lesions.*" R. at 14 (emphasis added). Although the examiner made this statement about acne lesions, he did not comment in his report about facial scarring. However, testimony was given at the 1989 VARO hearing regarding facial scarring resulting from both the removal of an epidermal cyst in 1987 and from acne lesions. R. at 25, 27. This testimonial evidence was not addressed by the Board in its decision, and therefore it is not clear what bearing this evidence had, if any, on the Board's determination that the veteran was not markedly disfigured. Therefore, in readjudicating this claim upon remand, the Board should consider not only the presence or absence of acne lesions but also the veteran's facial scarring in evaluating the extent of the veteran's disfigurement. 38 C.F.R. § 4.118, DC 7800. Furthermore, the Board must account for this evidence by providing reasons or bases for its finding and conclusions in compliance with 38 U.S.C. § 7104(d) and with the standard articulated by this Court in *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). *See also Hatlestad,* 1 Vet.App. at 169.

■ Finally, in the recitation of the facts of this case, the Court has noted the various diagnostic codes the VA has used to evaluate the veteran's skin condition. The Court recognizes that when the regulations do not provide diagnostic codes for specific disorders, it is necessary for the VA to evaluate those conditions under codes for similar disorders or codes that provide a general description that may encompass many ailments. However, in such cases, the Board should explain in its decision the diagnostic code under which the claim is evaluated, and, most importantly, explain any inconsistencies, apparent or real, that result when the Board cites a code different from that used by the VA at other times in the history of the adjudication of the claim, including codes used by the agency of original jurisdiction or cited in the Statement of the Case. Shifting diagnostic codes throughout the adjudication process, while perhaps harmless with regard to the decision reached, may create confusion as to the standards and criteria

employed in evaluating the claim. As this Court noted in *Gilbert* in discussing the legislative history of the "reasons or bases" requirement of 38 U.S.C. § 7104(d), one aim in requiring that BVA decisions state reasons or bases for findings and conclusions "was to provide 'a decisional document from the Board that will enable a claimant to understand, not only the Board's decision *but also the precise basis for that decision....*'" S.Rep. No. 418, 100th Cong., 2nd Sess. 38 (1988) (emphasis added), *quoted in Gilbert,* 1 Vet.App. at 56. Therefore, the Court directs the Board upon readjudication of this claim to provide an explanation for the various diagnostic codes used in evaluating the veteran's skin disorder.

## CONCLUSION

For the reasons stated above, the June 20, 1990, decision of the BVA is VACATED and the case REMANDED for readjudication consistent with this opinion.