Alex F. MESSER, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–1919.

United States Court of Veterans Appeals.

Feb. 11, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The appellant, Vietnam-era veteran Alex F. Messer, Jr., appeals from an August 8, 1991, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to a permanent and total disability rating for pension purposes. *Alex F. Messer, Jr.*, BVA 91–25786 (Aug. 8, 1991). The Secretary of Veterans Affairs (Secretary) has filed a motion for partial summary affirmance and for partial remand. Summary disposition is appropriate here because the case is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). Because the Board failed to provide an adequate statement of reasons or bases for its decision, the Court will deny the Secretary's motion for summary affirmance, grant his motion for remand, vacate the decision, and remand the matter for readjudication.

## I. BACKGROUND

The veteran has recognized service from June 30, 1972, to October 16, 1975. R. at 1. He injured his back in 1986, and, in the same year, underwent surgery to remove a protruded disc and to decompress a nerve root. R. at 11. In an administrative law judge (ALJ) decision dated October 15, 1987, the Social Security Administration (SSA) awarded the veteran disability insurance benefits for the period from March 14, 1986, to October 31, 1987. R. at 14. Although the SSA decision indicates that benefits were to cease at the end of October 1987, a letter from the SSA to the veteran indicates that the veteran was still receiving benefits as of June 3, 1990. R. at 44–

46. The record contains no document specifying the SSA action by which those benefits were renewed.

On May 15, 1989, the veteran applied to the Department of Veterans Affairs (VA) for non-service-connected disability pension. Based on an August 31, 1989, VA medical examination (R. at 16–21), a VA regional office (RO) rated the veteran as 40% disabled due to post-operative residuals of a lumbar laminectomy with left radiculopathy (R. at 22); and, based on a November 10, 1989, report of a private psychiatrist (R. at 34–36), the RO rated the veteran as 30% disabled due to adjustment disorder with depressed mood (R. at 39). The RO further rated the veteran as zero-percent disabled due to a soft-tissue nodule on the left lung that had been noted during the August 1989 VA examination. The RO assigned a 60% non-service-connected rating and determined that the veteran did not qualify for VA pension. R. at 39. The veteran appealed the RO decision, and, at the direction of the BVA (R. at 54–56), VA provided the veteran with an additional medical examination of his lung. The new examination revealed that the nodule had not changed since the 1989 VA examination, that it might be related to a history of coccidioidomycosis, and that two years of follow-up examinations were needed to "confirm [the nodule's] likely benign etiology". R. at 60. (Coccidioidomycosis is a fungous disease affecting the lungs, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 351 (27th ed. 1988)). On the basis of the new examination, the RO confirmed the zero-percent rating for the lung nodule and reaffirmed its denial of pension. R. at 61.

In its August 8, 1991, decision, the Board denied VA pension on the grounds that "[t]he veteran's disabilities are less than 100 percent disabling, and he is not unemployable by reason of his disabilities". *Messer*, BVA 91–25786, at 6. *See* 38 U.S.C.A. § 1521 (West 1991) (veteran eligible for VA non-service-connected disability pension if found permanently and totally

disabled); *see also* 38 U.S.C.A. § 1502 (West 1991) (providing circumstances under which permanent and total disability may be presumed on the basis of expected duration of disability and effect of disability(ies) on employability or "ability to follow a substantially gainful occupation"); *Talley v. Derwinski*, 2 Vet.App. 282, 287–88 (1992). The veteran challenges the Board's decision on four grounds: The failure (1) to give an adequate statement of reasons or bases for its denial of a total and permanent disability rating; (2) to use the correct diagnostic code in evaluating the veteran's lung nodule; (3) to order pulmonary function tests in evaluating the veteran's lung disability; and (4) to order a new VA examination to determine the severity of the veteran's back disability.

## II. Analysis

■ The Board's first error was its failure to provide an adequate statement of reasons or bases for denying the veteran entitlement to VA non-service-connected pension based on total and permanent disability. In the REASONS AND BASES section of its decision, the Board first discussed the results of the 1991 VA X ray, the November 1989 psychiatric evaluation, and the August 1989 VA medical examination. It then stated only:

> In none of these evaluations is there any indication that the veteran is completely incapable of pursuing gainful employment. When the factors of age, training and education are considered along with the veteran's disabilities, it is clear that there is not a sufficient basis upon which to grant [non-service-connected] pension benefits.

*Messer*, BVA 91–25786, at 5. Although the Board discussed the evidence, it did not, in its conclusion, "identify those findings it deem[ed] crucial to its decision [or] account for the evidence which it [found] to be persuasive or unpersuasive". *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). On remand, the Board must "articulate with reasonable clarity" the reasons or bases for its decision. *Ibid.*

■ This failure to provide an adequate statement of reasons is exacerbated by the Board's failure to discuss the veteran's award of SSA disability insurance benefits and any SSA determination concerning the veteran's unemployability. Once a veteran submits a well-grounded claim, the Secretary must assist the claimant in "developing the facts pertinent to" his or her claim. 38 U.S.C.A. § 5107(a) (West 1991); *see Murphy v. Derwinski*, 1 Vet.App. 78, 81–82 (1990); *Hyder v. Derwinski*, 1 Vet.App. 221, 224–25 (1991). Further, "[t]he Secretary's duty to assist includes obtaining [relevant evidence] from the SSA, and giving it appropriate consideration and weight in its determination to award or deny a total disability rating based on unemployability". *Murincsak v. Derwinski*, 2 Vet.App. 363, 370 (1992); *see* 38 U.S.C.A. § 5106 (West 1991). In its August 1991 decision, the BVA correctly concluded that the veteran had submitted a well-grounded claim. The Board, then, had a duty to obtain and discuss relevant evidence from the SSA. As noted above, the record on appeal contains no ALJ decisions other than the one dated October 1987, even though the SSA letter to the veteran revealed that the SSA had at some point renewed its award of benefits to the veteran after October 1987. Therefore, on remand, the Board must attempt to obtain all SSA decisions and records concerning the veteran's claim for and award of SSA benefits. The Board must then readjudicate the veteran's claim, taking into account all SSA ALJ decisions, "and to the extent [that SSA] conclusions are not accepted, reasons or bases should be given therefor". *Collier v. Derwinski*, 1 Vet.App. 413, 417 (1991); *see Gilbert*, 1 Vet.App. at 56–57.

Next, the veteran contends that the BVA evaluated his left-lung nodule under the wrong diagnostic code. The RO had evaluated the veteran's lung nodule as a benign growth of the respiratory system under 38 C.F.R. § 4.97, Diagnostic Code (DC) 6820 (1992). This diagnostic code lists no disability ratings or corresponding symptoms. Instead, it provides that ratings "will be based on interference with respiration, using any applicable respiratory analogy". *Ibid.* The 1991 VA examination indicates that the veteran had a history of coccidioi-

domycosis (R. at 60), and the veteran contends that he should be evaluated under 38 C.F.R. § 4.97, DC 6821 (1992), the diagnostic code for coccidioidomycosis. In its August 1991 decision, the BVA nowhere mentions the diagnostic code by which it evaluated, by analogy, the veteran's lung growth.

■ Pursuant to 38 U.S.C.A. § 1155 (West 1991), the Secretary must "adopt and apply a schedule of ratings of reductions in earning capacity from specific injuries and combination of injuries". When neither the regulations nor the ratings schedule corresponds perfectly to a claimant's disorder, "it is necessary for [VA] to evaluate [the disorder] under codes for similar disorders or codes that provide a general description that may encompass many ailments. [I]n such cases, the Board should explain in its decision the diagnostic code under which the claim is evaluated". *Pernorio v. Derwinski*, 2 Vet.App. 625, 629 (1992). On remand, the BVA must state which diagnostic code in the schedule of ratings it is using to evaluate the veteran's lung disability, and it must give reasons or bases for choosing that particular code. If the BVA decides to rate the veteran's disability under DC 6820, the Board must account for its choice in light of the veteran's history of coccidioidomycosis and the inconclusive diagnosis of the nodule in the 1991 VA radiologist's report.

The veteran next challenges the adequacy of VA's 1991 chest examination. As noted above, the BVA originally remanded the veteran's lung-nodule claim for further development. In its December 4, 1990, remand decision, the BVA stated that the 1989 examination had failed to reveal whether or not the veteran's lung nodule was malignant and further found that the current status of his respiratory system was unclear from the record before the Board. R. at 55. It then ordered the RO to "schedule the veteran for a pulmonary examination to determine the current status of his respiratory system with special emphasis devoted to the soft tissue nodule in his left mid chest. All pertinent tests and indicated special studies should be per-

formed." *Ibid.* The records reveals that on remand the veteran received only an X ray, the same test he had received at the VA medical facility in 1989. In its August 1991 decision, the Board upheld the extent of the examination stating: "[I]t seems likely that the examiners witnessed no pulmonary distress and as a consequence, found it unnecessary to test pulmonary function". *Messer*, BVA 91–25786, at 5.

■ The Board failed to provide any reasons or bases for its conclusion that it was "likely" that the examiners had determined that there was no pulmonary distress. Where an examination is necessary for evaluation of a disability, VA regulations require that the examination provide a comprehensive and detailed assessment of the claimant's disabilities and their effect upon the claimant's ordinary activity. *See* 38 C.F.R. § 4.1 (1992) (for application of rating schedule, accurate and fully descriptive medical examinations are required); 38 C.F.R. § 4.2 (1992) (if examination report does not contain sufficient detail, rating board must return report as inadequate); 38 C.F.R. § 4.10 (1992) (medical examiner must furnish etiological, anatomical, pathological, laboratory, and prognostic data as well as full description of effects of disability upon patient's ordinary activity); *see also Schafrath v. Derwinski* 1 Vet.App. 589, 594 (1991). Here the 1991 VA examination, consisting only of an X-ray report, failed to provide a comprehensive assessment of the "current status of [the veteran's] respiratory system" as required by the 1990 BVA remand. Therefore, the Board was required to provide reasons or bases supporting its conclusion that the examiners had observed no pulmonary distress, or to return the examination report as inadequate for evaluation purposes (38 C.F.R. § 4.2) and order a fully descriptive examination of the veteran's pulmonary function.

Finally, the veteran challenges as too old the 1989 VA examination of his back. The record contains no complaints of a worsening condition or increased discomfort. Moreover, at the time of the August 1991 BVA decision, the examination results were

only two years old. In light of these facts, the Court holds that the duty to assist does not require a reexamination of the veteran's back. *Cf. Proscelle v. Derwinski*, 2 Vet.App. 629, 632 (1992) (when veteran submitted well-grounded claim that service-connected condition had worsened and last examination had been given four years earlier, VA was required to order new examination as part of duty to assist). However, once the Board reviews the SSA records, it may choose to order a new back examination.

Upon consideration of the record, the appellant's brief, the Secretary's motion for partial summary affirmance and partial remand, and the appellant's reply to the Secretary's motion, the Court summarily vacates the August 8, 1991, BVA decision and remands the matter to the BVA for prompt fulfillment of the duty to assist and prompt readjudication, in accordance with this decision, on the basis of all the evidence and material of record, and issuance of a new decision supported by an adequate statement of reasons or bases. *See* 38 U.S.C.A. § 7104(a), (d)(1) (West 1991); *Gilbert, supra; Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). On remand, the appellant will be free to offer additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed, if adverse, to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new final Board decision is mailed to the appellant.

VACATED AND REMANDED.