Citation Nr: 1508812 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 13-01 855 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to a disability rating higher than 10 percent for right rotator cuff and biceps tenosynovitis.


REPRESENTATION

Veteran represented by: Missouri Veterans Commission


ATTORNEY FOR THE BOARD

D.C. Babaian, Associate Counsel



INTRODUCTION

The Veteran served on active duty from February 1977 to February 1997.

This matter initially came before the Board of Veterans' Appeals on appeal from an October 2010 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. In January 2014, the Board remanded the appeal for contemporaneous VA treatment records and VA examination. The requested development has been, at the very least, substantially completed. See Stegall v. West, 11 Vet. App. 268 (1998). 


FINDINGS OF FACT

1. The Veteran does not have X-ray evidence of degenerative arthritis involving two or more major joints, without limitation of motion but with incapacitating exacerbations, injured during or due to his military service. 

2. The Veteran has never had ankylosis of the left scapulohumeral articulation.

3. The Veteran has not shown flexion or abduction of the right shoulder functionally limited to 90 degrees, or shoulder level, at any time during the pendency of the claim.

4. The Veteran has had neither fibrous union or malunion (either marked or moderate) of the left humerus nor any frequency of recurrent dislocation with any degree of guarding of movement involving the left glenohumeral joint.

5. The Veteran has not exhibited malunion, nonunion (with or without loose movement), or dislocation of the left clavicle or scapula at any time during the pendency of the claim.



CONCLUSION OF LAW

The criteria for a disability evaluation greater than 10 percent for right rotator cuff and biceps tenosynovitis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.2, 4.3, 4.7, 4.10, 4.21, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5024, 5200, 5201, 5202, 5203 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was provided in a VA letter of August 2010, including what the evidence must show for a claim for increase. The Veteran has neither alleged, nor demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, adjudication of his claim at this time is warranted. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). Private and VA treatment records are a matter of record. 

The Veteran was provided with VA examinations in September 2010 and March 2014, the reports of which have been associated with the claims file. The Board finds the collective result of these examinations to be thorough and adequate, providing a sound basis upon which to render a decision with regard to the Veteran's claim. The VA examiners personally interviewed and examined the Veteran, including eliciting a history from him. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007). Neither the Veteran nor his representative has now objected to the adequacy of the examinations. See Sickels v. Shinseki, 643 F.3d 1362, 1365-66 (Fed. Cir. 2011).

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. Since VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

II. Increased Rating

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the appellant working or seeking work. 38 C.F.R. § 4.2. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

The Board also appreciates that staged ratings are appropriate whenever the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." Butts v. Brown, 5 Vet. App. 532 (1993). VA may change the diagnostic code, but must specifically explain such change. Pernorio v. Derwinski, 2 Vet. App. 625 (1992). As will be discussed below, ratings for disabilities of the rotator cuff and biceps tendon are generally based limitation of motion of the affected part(s) (e.g. limited range of motion of the arm at the shoulder). See 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5024. That is, VA attempts to quantify the symptoms and limitation caused by a variety of impairments, regardless of how they are diagnosed. Accordingly, all potentially relevant diagnostic codes will be considered. 

In a July 2010 statement, more than one year following notification of the original grant of service connection, the Veteran reported worsening of his right shoulder disability. In another statement, received in September 2010, the Veteran described the difficulty climbing in and out of vehicles and sleep impairment, both related to shooting pain in his shoulder. In a January 2013 VA Form 9, the Veteran indicated that a higher evaluation was warranted for severe pain and limited strength. The Veteran also indicated that he is limited to holding his arm up for more than five minutes during any activity.

The Veteran also provided two lay statements in September 2010. Colleagues attested to the Veteran's increased absenteeism at work due to his disabilities. In fact, the Veteran took a supervisor position, at less pay, to avoid the constant pain of climbing into vehicles. 

Additionally, his representative in April 2011 indicated that the Veteran underwent surgery in January 2011, for painful and limited range of motion of the right shoulder. 

Private treatment records contain an MRI in January 2011, showing extensive labral tear, involving the superior labrum (SLAP tear), posterior labrum, anterior labrum, and inferior labrum; an intercurrent injury in December 2010 is also identified (reported in February 2011 VA treatment records as well). Other records document arthroscopy performed in April 2011. Surgery and post-surgery records reference the Veteran's complaints of increased pain and testing positive on several impingements tests. The discharge instructions required that the Veteran wear a sling for two weeks. While VA treatment records show approval for four to six weeks, the Veteran underwent two weeks of physical therapy and was returned to light duty (defined as no lifting, pushing, or pulling with the right arm) in April 2011.

In March 2014, while the VA examiner noted no total shoulder joint replacement, the Veteran did undergo arthroscopic repair of a right glenoid labral tear with shoulder decompression and distal clavicle excision and biceps tenodesis. The procedure resolved pain in the superior aspect of the right shoulder but resulted in pain in the posterior right scapula and anterior right shoulder area. The VA examiner also noted nonpainful and stable scars, measuring less than 39 square centimeters. 

The Board makes no determination as to whether the most recent injury, involving the labral tear, is a continuation of or was caused by service-connected right shoulder disability. Even considering all current pathology involving the right shoulder, an evaluation in excess of 10 percent is still not warranted.

Schedular Evaluation

The Rating Schedule instructs that tenosynovitis will be rated on limitation of motion of affected part(s), as degenerative arthritis (DC 5003). 38 C.F.R. § 4.71a, DC 5024. Diagnostic Code 5003 has three alternative imperatives, depending on the extent of limited motion involved. It first directs that arthritis, established by X-ray evidence, will be rated based on limitation of motion for the specific joint involved (thereby implicating DC 5201 on these facts). Where, however, that would result in a noncompensable rating, a 10 percent evaluation may be assigned for each qualifying major joint with less than compensable-but some degree of-limited motion. Third-in the absence of any limitation of motion-a 10 percent evaluation, or a maximum of 20 percent (with occasional incapacitating exacerbations), may be assigned under DC 5003 just for arthritis involving two or more major joints. See 38 C.F.R. § 4.71a, DC 5003, Note 1. While pausing to note that a group of minor joints is not implicated here, the Board recognizes that the Rating Schedule defines the shoulder as a major joint. See 38 C.F.R. § 4.45(f).

While X-rays in September 2010 were unremarkable, private treatment records contain a MRI scan from January 2011 that showed moderate to severe degenerative joint disease of the right acromioclavicular joint. While the Veteran is also service connected for right and left knee osteoarthritis (for which separate 10 percent evaluations are assigned under DC 5262), the Veteran has exhibited limited motion of the shoulder. Moreover, there is no evidence of record establishing occasional incapacitating exacerbations, required for the next higher-and highest possible-evaluation of 20 percent under DC 5003. Thus, a compensable evaluation is not warranted based solely on the presence of arthritis, or the third imperative of DC 5003. See FAQ, Arthritis and DC 5003 (Sept. 2003).

The Board now turns to limitation of motion. Diagnostic Code 5201 involves limitation of motion of the arm, specifically at the shoulder. As a point of reference, normal ranges of upper extremity motion are defined by VA regulation, as follows: forward elevation (flexion) from zero to 180 degrees; abduction from zero to 180 degrees; and internal and external rotation to 90 degrees. Lifting the arm to shoulder level is the equivalent of lifting to 90 degrees, whereas lifting midway between the side and shoulder equates to 45 degrees of motion. See 38 C.F.R. § 4.71, Plate I.

The Board notes that the Veteran is right-hand dominant. Diagnostic Code 5201 provides that limitation of motion of the major (or dominant) arm at shoulder level warrants a 20 percent disability rating. Limitation of motion of the minor arm midway between the side and shoulder level warrants a 30 percent disability rating. Limitation of motion of the minor arm to 25 degrees from the side warrants a maximum 40 percent rating. 38 C.F.R. § 4.71a, DC 5201.

VA treatment records from December 2009 show full range of motion of the right shoulder. In January 2010, a rehabilitation note documented full strength, with pain increased above baseline; overall improvement was noted in symptoms since starting a less strenuous job.

During September 2010 VA examination, the Veteran exhibited full 180 degrees of right shoulder flexion and abduction, with pain.
Both a VA surgery consult in February 2011 and a primary care note from October 2013 show full range of motion of the right shoulder, the latter indicating mild pain with resistance.

The March 2014 VA examination showed the following ranges of motion for the right shoulder: 165 degrees of flexion, with objective pain documented at 110 degrees, and 155 degrees of abduction, without objective evidence of pain. Here, as the Veteran's range of motion convincingly exceeds the 90-degree threshold, the evidence of record fails to show that the range of motion in the Veteran's right shoulder is, or has been at any time during the course of the appeal, sufficiently limited as to warrant even a minimally compensable rating of 20 percent. Yet, the inquiry does not end here. 

The Board has considered whether a higher disability evaluation is warranted on the basis of functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40 and 4.45. See also DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss contemplates the inability of the body to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance, and must be manifested by adequate evidence of disabling pathology, especially when it is due to pain. 38 C.F.R. § 4.40. Additionally, painful motion is an important factor of disability; and joints that are actually painful, unstable, or malaligned, due to healed injury, should be entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. 

Pain alone is not sufficient to warrant a higher rating, as pain may cause a functional loss, but pain itself does not constitute functional loss. Mitchell v. Shinseki, 25 Vet. App. 32, 36-38 (2011). Rather, pain must affect some aspect of "the normal working movements of the body" such as "excursion, strength, speed, coordination, and endurance," in order to constitute functional loss. Id. at 43; see 38 C.F.R. § 4.40.

In September 2010, denying instability and giving way, the Veteran endorsed pain, weakness, stiffness, fatigability, and lack of endurance. Not finding incoordination, the VA examiner documented the presence of fatigue, weakness, and lack of endurance on both the first and fifth iterations of shoulder movement. Yet, five repetitions did not diminish range of motion.

While noting localized tenderness or pain on palpation of joints/soft tissue/biceps tendon of the right shoulder in March 2014, the VA examiner documented that functional impairment included only pain on movement and less movement than normal, and functional loss was not such that no effective function remains other than that which would be equally well served by an amputation with prosthesis. As noted above, initial onset of pain during flexion did not preclude further movement. Repetitive testing did demonstrably reduce the range of flexion to 160 degrees and the range of abduction to 150 degrees. Still, these measurements significantly exceed those required for the next higher evaluation.

The Board also finds the objective testing on VA examination, consistent with VA treatment records, more probative than the Veteran's self-assessment regarding diminished strength. In 2014, the VA examiner explicitly found no objective evidence or documentation of weakness, fatigability, or incoordination of the Veteran's affected right shoulder joint with repeated use over a period of time. Therefore, the examiner indicated that he would have to resort to mere speculation to provide an opinion as to whether pain, weakness, fatigability, or incoordination could significantly limit functional ability with repeated use. For the same reason, the examiner would also have to resort to mere speculation to describe any additional limitation, under such circumstances, due to pain, weakness, fatigability, or incoordination. The Veteran has consistently exhibited full (5/5) strength.

Moreover, though the Veteran endorsed flares that could persist for weeks (associated with physical therapy) during VA treatment in January 2010, he denied flares that impact the function of the shoulder and/or arm, during both the September 2010 and March 2014 VA examinations. In 2014, the Veteran reported that right shoulder pain, described as a constant throb with episodes of sharp pain, occurred daily and persisted for hours. The Veteran described greater discomfort with increased computer work and while working on a motorcycle-with pulling and pushing, lifting greater than five pounds, reaching out at chest level, and reaching overhead. While describing increased discomfort with such activities, there is no evidence of additional functional impairment.

Consequently, the overall disability picture most closely approximates a 10 percent evaluation either under DC 5003, for radiographic evidence of arthritis, or under DC 5024, for tenosynovitis involving the biceps tendon, which both result in painful and limited motion of the right shoulder that is not otherwise compensable under DC 5201.

The Board now considers whether a higher rating or any possible separate evaluation based on distinct manifestations of disability is permissible under any other DC available for rating disability of the shoulder and arm, including DCs 5200, 5202, and 5203. 

Any evaluation under DC 5200 requires ankylosis of the scapulohumeral articulation (the scapula and humerus move as one piece), under progressive criteria beginning with a minimally compensable evaluation of 30 percent for favorable ankylosis (defined as abduction to 60 degrees-the ability to reach mouth and head). There is no such evidence of record, including private and VA treatment records. Moreover, the VA examiners in September 2010 and March 2014 explicitly ruled out a finding of ankylosis.

The evidence also fails to establish the minimum compensable evaluation of 20 percent under DC 5202. There is no evidence of malunion, nonunion (false flail joint), or loss of the head (flail shoulder) of the humerus. The record does not otherwise establish the predicate recurrent dislocations of the scapulohumeral joint. During September 2010 VA examination, the Veteran reported popping and locking of the right shoulder, but he denied episodes of dislocation; not finding any instability, the VA examiner did note guarding of movement. The VA examiner, in March 2014, noted a history of mechanical symptoms (e.g. clicking, catching), without history of recurrent dislocation (subluxation) of the glenohumeral (scapulohumeral) joint. Crank apprehension and relocation, cross-body adduction, and O'Brien's tests were all negative, and there was no evidence of guarding.



Last, a higher evaluation is not warranted under DC 5203. No pathology involving the scapula, attributable to service-connected disability, has been identified. The Veteran has not exhibited dislocation or nonunion (with or without loose movement) of the clavicle at any time during the pendency of this claim. That is, the Veteran could not be entitled to a higher 20 percent evaluation under DC 5203. In fact, the evidence does not establish even a minimally compensable (10 percent) evaluation based on malunion of the clavicle. In any event, the Board notes that Rating Schedule explicitly indicates that a disability will be rated under DC 5203 or on impairment of function of the contiguous joint, in the alternative. 38 C.F.R. § 4.71a, DC 5203. Here, a 10 percent evaluation has been assigned for right shoulder disability.

As described, the overall disability picture does not more closely approximate rating criteria in excess of 10 percent, under either any single or permissible combination of diagnostic code(s). 

Extraschedular Evaluation

The Board now also considers whether referral for consideration of an extraschedular rating is warranted. The Board recognizes that if an exceptional case arises, where ratings based on the statutory schedules are found to be inadequate, consideration of an "extra-schedular" evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities will be made. 38 C.F.R. § 3.321(b)(1). The U.S. Court of Appeals for Veterans Claims has held that the determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry, the responsibility for which may be shared among the RO, the Board, and the Under Secretary for Benefits or the Director, Compensation and Pension Service. Thun v. Peake, 22 Vet. App. 111 (2008). 

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. This means that initially there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral is required. If the criteria do not reasonably describe the claimant's disability level and symptomatology, a determination must be made whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. 

In this case, the threshold element for an extraschedular evaluation is not met. The VA, private, and lay evidence fails to show anything unique or unusual about the Veteran's residual disability that would render the schedular criteria inadequate. The Veteran's symptoms-pain and limited motion-have been specifically contemplated within the schedular rating that has been assigned. Additional VA examination findings in September 2010 showed full 90 degrees of internal rotation but only 45 degrees of external rotation, unchanged after five repetitions. Reporting use of Tramadol and Advil, the Veteran denied any related hospitalizations.

In March 2014, the Veteran demonstrated right shoulder extension of 45, 50, and 50 degrees, over three repetitions. Internal rotation measured 55 degrees, external rotation measured 75 degrees, and adduction measured 35 degrees-each over three repetitions. The Veteran reported working full time; he estimated missing about ten days of work in last couple of years due to right shoulder discomfort. The Veteran trialed prescriptions for both Tramadol, with minor relief, and Vicodin, with relief, but discontinued use. He currently ices, rests, and takes self-prescribed Motrin, approximately twelve tabs daily, with 10-15% relief.

Yet, all of these findings and limitations are based on the underlying symptoms considered by the rating schedule, and the rating schedule is specifically designed to approximate average impairment in capacity for employment. Nothing, here, tends to show that this axiom inadequately compensates the extent of manifest disability associated with right shoulder disability. The Veteran has been provided with two thorough examinations during the course of his appeal, neither of which identify any symptomatology not reasonably contemplated by the schedular diagnostic codes considered. Therefore, because the schedular rating criteria reasonably describe the claimant's disability level and symptomatology, referral for consideration of an extraschedular rating is not warranted. 

The Board also notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. 

Finally, in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court held that a claim for a total rating based on individual unemployability (TDIU) is part of an increased rating claim when such claim is expressly raised by the Veteran or reasonably raised by the record. The Veteran consistently reports that he is actively employed. The issue of entitlement to a TDIU is not expressly raised by the Veteran or reasonably raised by the record and, consequently, the Rice case is not for application.

The Board thereby concludes that the preponderance of the evidence is against assigning a higher schedular rating for any period on appeal and against referring the case for extraschedular consideration. Hence, the appeal must be denied. There is no reasonable doubt to be resolved in this case. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.



ORDER

A rating in excess of 10 percent for right rotator cuff and biceps tenosynovitis is denied.


____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs