Citation Nr: 1546194 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 11-00 107A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

1. Entitlement to an initial evaluation in excess of 50 percent for posttraumatic stress disorder (PTSD).

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran



ATTORNEY FOR THE BOARD

A. Santiago, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1967 to October 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2009 rating decision from the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. That rating decision granted an initial 30 percent rating for PTSD, effective January 14, 2009.

The Veteran testified before the undersigned Veterans Law Judge at a Board video conference hearing in March 2015. The Board notes that additional evidence was received in October 2015 in the form of treatment records, subsequent to the most recent supplemental statement of the case (SSOC). However, in September 2015, the Veteran's representative submitted a written statement, waiving the Veteran's right to RO review of new evidence. Thus, a remand for another SSOC is not necessary. See 38 C.F.R. § 20.1304(c) (2015).

The Board remanded the appeal for further development in June 2015. An August 2015 rating decision increased the initial 30 percent rating for PTSD to 50 percent, effective January 14, 2009. Although a higher rating has been assigned, the increased rating matter remains in appellate status as the maximum rating has not been assigned. See AB v. Brown, 6 Vet. App. 35, 38 (1993) (holding that a decision awarding a higher rating, but less than the maximum available benefit, does not abrogate the pending appeal).


FINDING OF FACT

Since the award of service connection, the evidence of record shows that the Veteran's PTSD caused occupational and social impairment with reduced reliability and productivity; occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, or worse severity has not been shown.


CONCLUSION OF LAW

The criteria for an initial evaluation in excess of 50 percent for service-connected PTSD have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014).

The appeal arises from a disagreement with the initially assigned disability rating after service connection was granted. Once a decision awarding service connection, a disability rating, and an effective date has been made, section 5103(a) notice is no longer required because the claim has already been substantiated.

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c).

The Veteran's service treatment records and post-service VA treatment records have been obtained. In accordance with the June 2015 remand instructions, more recent VA and Vet Center treatment records have also been obtained. 

The Veteran was provided VA medical examination in February 2009, April 2010, and February 2015. The examinations are sufficient evidence for deciding the claim. The reports are adequate as they are based upon review of the Veteran's claims file, consideration of the Veteran's prior medical history and examinations, describe the PTSD symptoms in sufficient detail so that the Board's evaluation is a fully informed one, and contain reasoned explanations. Thus, VA's duty to assist has been met.

II. PTSD Rating

Generally, disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2015). The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). In resolving this factual issue, the Board may only consider the specific factors as are enumerated in the applicable rating criteria. See Massey v. Brown, 7 Vet. App. 204, 208 (1994); Pernorio v. Derwinski, 2 Vet. App. 625, 628 (1992).

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41 (2015). Consideration of the whole recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Although the regulations do not give past medical reports precedence over current findings, the Board is to consider the Veteran's medical history in determining the applicability of a higher rating for the entire period in which the appeal has been pending. Powell v. West, 13 Vet. App. 31, 34 (1999).

The appeal pertaining to PTSD is based on the assignment of a disability rating following the initial award of service connection. Fenderson v. West, 12 Vet. App. 119, 126 (1999). Accordingly, evidence contemporaneous with the claim and the rating decision that granted service connection are most probative of the degree of disability existing when the initial rating was assigned and should be the evidence "used to decide whether an original rating on appeal was erroneous." Id. at 126. If later evidence indicates that the degree of disability increased or decreased following the assignment of the initial rating, "staged" ratings may be assigned for separate periods. Id. As detailed above, the effective date of the award of service connection for PTSD and the initially assigned 30 percent rating is January 14, 2009, and the 30 percent rating was subsequently increased to 50 percent with the same effective date.

In determining the applicable disability rating, pertinent regulations do not require that all cases show all findings specified by the Rating Schedule; rather, it is expected in all cases that the findings be sufficiently characteristic as to identify the disease and the resulting disability, and above all, to coordinate the impairment of function with the rating. 38 C.F.R. § 4.21 (2015). Therefore, with respect to the claim herein, the Board will consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991).

According to 38 C.F.R. § 4.130, Diagnostic Code 9411, a 10 percent evaluation is warranted for PTSD where there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or symptoms controlled by continuous medication.

A 30 percent evaluation is warranted for PTSD where there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent evaluation is warranted for PTSD where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent evaluation is warranted where there is objective evidence demonstrating occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, or effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and the inability to establish and maintain effective relationships. Id.

A 100 percent disability evaluation is warranted when there is total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; and memory loss for names of close relatives, own occupation, or own name. Id.

The specified factors for each incremental psychiatric rating are not requirements for a particular rating, but instead are examples providing guidance as to the type and severity of symptoms' effects on social and work situations. Thus, any analysis should not be limited solely to whether the symptoms listed in the rating scheme are exhibited; rather, consideration must be given to factors outside the specific rating criteria in determining the level of occupational and social impairment. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In Mauerhan, it was rejected "that the DSM-IV criteria should be the exclusive basis in the schedule governing ratings for PTSD." Id. at 443. Instead, distinctive PTSD symptoms in the DSM-IV are used to diagnose PTSD rather than evaluate the degree of disability resulting from the condition. Although certain symptoms must be present in order to establish the diagnosis of PTSD, as with other conditions, it is not the symptoms but their effects that determine the level of impairment. Id.; see also Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013) (explaining that the symptoms that could give rise to a given rating are those in like kind, i.e., of similar duration, severity, and frequency, to those provided in the non-exhaustive lists).

In evaluating the evidence, the Board has considered the various Global Assessment of Functioning (GAF) scores that clinicians have assigned. The GAF is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See DSM-IV; Carpenter v. Brown, 8 Vet. App. 240 (1995). A GAF score of 61-70 reflects some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning. A GAF score of 41-50 is assigned where there are serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

Here, the medical evidence of record regarding the Veteran's PTSD consists of VA examination reports, VA treatment records, and Vet Center records. At the February 2009 VA examination, the VA examiner diagnosed the Veteran with PTSD. The VA examiner noted the Veteran's history of symptoms including flashbacks and survivor guilt related to his service in Vietnam. The Veteran complained of nightmares related to Vietnam, occurring one or two times per month. The examiner noted that the Veteran had been incarcerated for 16 years and has avoided relationships with anyone because it is the way he felt secure in prison. The Veteran complained of trouble sleeping, getting no more than six hours of sleep per night, taking an hour and a half to go to sleeping, and waking at least twice a night. The examiner noted that the Veteran was not receiving treatment for PTSD except for psychotherapy as often as two times per month with a good response.

Regarding occupational history after prison, the examiner noted that the Veteran worked as a part-time welder and had good relationships with his supervisor and co-workers. Regarding social functioning, the Veteran stated he had close relationships with his three siblings. The Veteran reported being divorced, with no significant other, and having two children who he had not seen for 16 years.

On mental status examination, the examiner noted: orientation within normal limits; appropriate appearance, hygiene, and behavior; depressed mood which occurs as often as two time per month; communication, speech, and concentration within normal limits; panic attacks present, occurring less than once per week; signs of suspiciousness; no delusions or hallucinations; obsessional rituals, to include being very precise in the arrangement of his closet, which are severe enough to interfere with routine activities; appropriate thought processes; judgment not impaired; abstract thinking normal; memory within normal limits; and absent suicidal and homicidal ideation. The examiner assigned a GAF score of 60.

The examiner reported that the Veteran does not have difficulty performing activities of daily living and that he has difficulty understanding complex commands because he has to repeatedly ask questions so that a task can be completed. The examiner also reported that the Veteran does not appear to pose any threat of danger or injury to self or others and that the prognosis for the psychiatric condition is good. The examiner stated that the best description of his psychiatric impairment is: psychiatric symptoms are not enough to interfere with social and occupational functioning or to require continuous medication. The Board notes that this description is consistent with the criteria for a noncompensable (zero percent) rating for PTSD.

At the April 2010 VA examination, the examiner reported a diagnosis of PTSD chronic. The examiner noted that the Veteran was seeing a counselor at the Vet Center and was prescribed Celexa by his primary care provider, which the Veteran said he takes for feelings of depression. The Veteran reported getting anxious easily especially in crowded areas, getting irritable often, forgetting things, checking the door is locked and stove is off a lot, trouble sleeping, nightmares, and finishing a VA PTSD residential program. The examiner noted that the Veteran denied suicidal ideation, had low energy and interest, and fair concentration.

Regarding occupation, the Veteran reported working at Goodwill after being fired from his welding job. The examiner noted that the Veteran was doing well at his Goodwill job as long as he is left alone. The examiner reported similar social functioning, regarding relationships, as in the previous VA examination and indicated that the Veteran lives alone and isolates himself.

On mental status examination, the examiner reported similar results as in the previous examination and also the following results: hair uncombed and dirty jeans; constricted affect; depressed mood; average intelligence; panic attacks three time a week; and mildly impaired recent memory. The examiner reported the following PTSD symptoms: re-experiencing of traumatic event; avoidance; increased arousal symptoms. The examiner assigned a GAF score of 50 and reported that the Veteran's level of occupational and social impairment with regards to PTSD symptoms was: transient or mild PTSD signs and symptoms and decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. The Board notes that this description is consistent with the criteria for a 10 percent rating for PTSD.

At the February 2015 VA examination, the examiner reported a diagnosis of PTSD. The examiner noted that the Veteran regularly attends a Vietnam support group at the local Vet Center. The examiner noted that the Veteran was not taking any psychiatric medications because of concerns about his liver cirrhosis. The examiner reported psychiatric symptoms similar to the ones noted in the previous VA examinations, to include depressed mood, suspiciousness, chronic sleep impairment, disturbances in motivation and mood, and inability to establish and maintain effective relationships.

Regarding occupation, the Veteran reported doing odd jobs for neighbors and others and that his last regular job was with the VA as a traffic flow facilitator and parking lot shuttle driver for about one year, ending in 2011 because of lack of funding. The examiner noted that his VA supervisor wrote a very strong recommendation for the Veteran and indicated that he did very well with customer service and hard work. Regarding social functioning, the Veteran reported that he occasionally socialized with veterans outside of the support group and has occasional contact with his siblings and mother. Additionally, he reported that he had occasional contact with his daughter and becoming more involved in the Catholic Church, attending every week.

The examiner assigned a GAF score of 65 and reported that the Veteran's level of occupational and social impairment with regards to PTSD symptoms was best summarized as: occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. The Board notes that this description is consistent with the criteria for a 30 percent rating for PTSD.

VA treatment records and Vet Center records generally report symptoms and complaints consistent with the VA examination reports, to include denial of suicidal and homicidal ideation. See, e.g., VA treatment notes dated January 1, 2010, and December 4, 2009.

At the March 2015 Board hearing, the Veteran testified to last working five year ago. He also testified to having the following symptoms related to PTSD: problems with people, clients and employees, at Goodwill; not sleeping very well; feelings of guilt; nightmares; flashbacks; disliking being close to too many people; liking to keep his back to the wall and seeing the door; forgetting kids' birthdays, but not their names; and panic attacks, two to three times a day. The Veteran stated that he does not go out and socialize and barely sees his mother and children. He also testified to only talking about suicide to other veterans.

The evidence does not demonstrate occupational and social impairment, with deficiencies in most areas, which would warrant an increased rating of 70 percent at any time. While the Veteran has not been employed for five years, he was able to obtain work at the VA and receive a positive review from his supervisor. The evidence shows that the Veteran's PTSD symptoms interfere with his social functioning, but his symptoms do not rise to the level of social impairment required for a 70 percent evaluation as he has continued to attend a support group and started attending church regular. A disability that justifies a 70 percent rating is so severely disabling that some of the examples of symptoms include speech intermittently illogical, near-continuous panic or depression affecting the ability to function independently, and spatial disorientation. The Veteran does not have a history of having such symptoms. While the Veteran reported talking about suicide with other veterans, the evidence does not show that such thoughts interfered with his occupational or social functioning. Additionally, the record overwhelming shows the absence of suicidal ideation. Moreover, this case does not turn on presence or absence of a single symptom. Instead, the overall impact of the Veteran's PTSD symptoms on his occupational and social functioning must be assessed, and importantly, after consideration of the Veteran's reports and examinations, none of the VA examiners indicated that such functioning was impaired to a level that could be described by the criteria for even a 50 percent rating.

Furthermore, the evidence does not demonstrate total occupational and social impairment which would warrant an increased rating of 100 percent at any time. A disability that justifies a 100 percent rating is so severely disabling that some of the examples of symptoms include posing a "persistent" threat of danger to self or others and not knowing one's own name, the names of close relatives, or one's occupation. The Veteran does not have a history of having such symptoms.

Therefore, the Board finds that the evidence does not support an initial rating in excess 50 percent for the Veteran's PTSD at any time during the period on appeal. See Fenderson, 12 Vet. App. at 119. Because the preponderance of the evidence does not support a rating higher than 50 percent for the Veteran's PTSD, there is no reasonable doubt to be resolved here. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2015).

The evidence shows that the Veteran's service-connected PTSD results in some impairment. Here, the rating criteria reasonably describe the Veteran's disability level and symptomatology. As the criteria provide only examples of symptoms representing a spectrum of impairment encompassing total impairment, the criteria contemplate all psychiatric symptoms. Thus, the Veteran's disability picture, including any effects from the symptoms, is contemplated by the rating schedule, the assigned schedular evaluations for the service-connected PTSD are adequate, and thus, extraschedular referral is not required. Thun v. Peake, 22 Vet. App. 111 (2008); 38 C.F.R. § 3.321(b)(1) (2015). This is so even when the service-connected disabilities are considered in the aggregate.

The Board notes that, although entitlement to TDIU and extraschedular consideration can be inextricably intertwined, such that remand of TDIU entitlement would warrant remand of extraschedular entitlement, the necessity of such a remand occurs when the remand of TDIU entitlement is based on an incomplete disability picture. See Brambley v. Principi, 17 Vet .App. 20, 24 (2003). Here, the Board is not remanding the TDIU claim because it has been found the evidence is inadequately developed; instead, the Board is remanding the TDIU because such possible entitlement has been raised by some evidence of record and the RO has not yet adjudicated the matter in the context of this present appeal. In sum, under these circumstances, extraschedular consideration is not inextricably intertwined with the remand of the TDIU claim, so the extraschedular portion of the PTSD rating claim need not be remanded in this specific case. 


ORDER

An initial evaluation in excess of 50 percent for service-connected PTSD is denied.


REMAND

At the Board hearing the Veteran indicated that he has not worked for five year. Additionally, he testified that he was sent home from his work at Goodwill a couple of times for problems getting along with people and that he received a letter from his Goodwill supervisor informing him that he could not stay at work. Entitlement to a TDIU is a component of the appeal for a higher initial rating regarding the service-connected PTSD. See Rice v. Shinseki, 22 Vet. App. 447, 451-53 (2009). As such, the Board finds that the issue of entitlement to a TDIU has been reasonably raised by the record, and thus, it is necessary for the Board to remand the issue to allow for the RO to consider the issue in the first instance.

Accordingly, this issue is REMANDED for the following action:

After undertaking any development deemed appropriate, adjudicate the issue of entitlement to TDIU. See Rice, 22 Vet. App. at 451-53. If the benefit sought is not granted, furnish the Veteran and his representative with a supplemental statement of the case and afford them an opportunity to respond before the record is returned to the Board for further review, if in order.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs