Citation Nr: 1522721 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-32 171 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to a disability rating in excess of 10 percent for status-post dislocation, left shoulder, with traumatic fracture of coracoid process, post-operative, with degenerative changes and scar (left shoulder disability).


REPRESENTATION

Veteran represented by: Daniel G. Krasnegor, Attorney at Law


ATTORNEY FOR THE BOARD

A-L Evans, Associate Counsel





INTRODUCTION

The Veteran served on active duty from July 1981 to January 1986. 

This matter is before the Board of Veterans' Appeals (Board) on appeal of a June 2011 rating decision of the Roanoke, Virginia, Regional Office (RO) of the Department of Veterans Affairs (VA).

The Veteran's representative has limited his representation solely to the issue on appeal.


FINDING OF FACT

The Veteran's service-connected left shoulder disability is manifested by subjective complaints of painful motion and flare-ups and by objective evidence of decreased motion, functional loss and/or functional impairment.


CONCLUSION OF LAW

The criteria for a 20 percent disability rating, but no higher, for the Veteran's service-connected left shoulder disability has been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.69, 4.71, Diagnostic Code (DC) 5201 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA has a duty to provide notice of the information and evidence necessary to substantiate a claim. 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2014).

The Veteran was provided a standard notice letter in February 2011. 

VA also has a duty to provide assistance to substantiate a claim. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c).

The Veteran's service treatment records have been obtained. Post-service VA treatment records have also been obtained.

The Veteran was provided VA medical examinations in March 2011, November 2011 and December 2013. The examinations are sufficient evidence for deciding the claim. The reports are adequate as they are based upon consideration of the Veteran's prior medical history and examinations, describe the disability in sufficient detail so that the Board's evaluation is a fully informed one, and contain reasoned explanations. Thus, VA's duty to assist has been met.

II. Increased Rating

Legal Criteria

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

A claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Thus, separate ratings can be assigned for separate periods of time based on the facts found-a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

The assignment of a particular DC is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One DC may be more appropriate than another based on such factors as an individual's relevant medical history, the current diagnosis and demonstrated symptomatology. Any change in a DC by VA must be specifically explained. Pernorio v. Derwinski, 2 Vet. App. 625 (1992).

When evaluating joint disabilities rated on the basis of limitation of motion, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). It has been held that pain, even if throughout a joint's range of motion, does not constitute a functional loss in and of itself entitling a claimant to a higher rating under the applicable DC or the DeLuca factors. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011).

The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011). 

Ratings for functional impairment of the upper extremities depend on which extremity is the major extremity, i.e., the one predominantly used by the individual. Only one extremity is considered to be major or the dominant hand. 38 C.F.R. § 4.69 (2014). The Veteran is right-hand dominant as reported at the March 2011, November 2011 and December 2013 VA examinations. The Veteran's left shoulder disability is considered a disability in his minor extremity. 

The Veteran contends that his left shoulder disability is more severe than is represented by the currently assigned 10 percent rating assigned under DC 5202-5010.

Under DC 5010, degenerative or traumatic arthritis established by x-ray findings will be rated as degenerative arthritis. Under DC 5003, degenerative arthritis is to be rated on the basis of limitation of motion under the appropriate diagnostic does for the specific joint or joints involved. If the limitation of motion is noncompensable, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 20 percent evaluation is merited for x-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. A 10 percent evaluation is merited for x-ray evidence of involvement of two or more major joints or two or more minor joint groups. 38 C.F.R. § 4.71a, DC 5003 and 5010. The 10 and 20 percent ratings under these provisions will not be combined with ratings based on limitation of motion, nor are they to be combined with rating conditions listed under DCs 5013 to 5024, inclusive. DC 5003, Notes 1 & 2. 

Disabilities of the shoulder and arm are evaluated under rating criteria that contemplate ankylosis of scapulohumeral articulation (DC 5200), limitation of motion of the arm (DC 5201), other impairment of the humerus (DC 5202), or impairment of the clavicle or scapula (DC 5203). 

Normal range of motion of the shoulder is as follows: forward elevation (flexion) to 180 degrees; abduction to 180 degrees; internal rotation to 90 degrees; and external rotation to 90 degrees. 38 C.F.R. § 4.71, Plate I.


Facts

The Veteran was afforded a VA examination in March 2011. He complained of flare-ups which occurred several times per week and were described as 7/10. The flare-ups were precipitated by physical activity. No dislocation or incapacitating episodes were reported. 

Upon examination, no signs of edema, instability, abnormal movement, effusion, weakness, tenderness, redness, heat, deformity, malalignment, drainage, subluxation or guarding of movement were found. The Veteran's range of motion for his left shoulder was found to be within normal limits in all planes. His left shoulder joint function was not additionally limited by pain, fatigue, weakening, lack of endurance or incoordination after repetitive use. No ankylosis was found. 

The examiner reported a scar located on the Veteran's left shoulder. The scar was linear and measured 9.0 cm by 1.0 cm. The scar was not painful upon examination and there was no skin breakdown. There was no underlying tissue damage noted and it was absent inflammation and edema. No keloid formation was found. The scar was not disfiguring and did not limit the Veteran's motion. No limitation to function due to the scar was found. 

The Veteran was afforded another VA examination on November 2011. He reported weakness, stiffness, pain, lack of endurance, fatigability, tenderness and decreased range of motion. 

Upon examination, the report revealed that the Veteran's range of motion for his left shoulder flexion was to 140 degrees. The Veteran's range of motion for his abduction was to 120 degrees. His external rotation was to 65 degrees and his internal rotation was to 75 degrees. Pain began at the end points for each movement. The examiner noted that the objective evidence showed decreased range of motion and that the Veteran had difficulty with overhead reaching, with subjective evidence of pain.

The examiner noted a scar on the anterior left shoulder area which measured 8 cm by 0.5 cm. The scar was linear, not painful and there was no skin breakdown. The scar was noted to be superficial, with no inflammation, edema, keloid formation, disfigurement, or limitation of motion or function.

The Veteran was afforded a VA examination in December 2013. He reported flare-ups which impacted his range of motion and strength. Upon examination, the report revealed that the Veteran's range of motion for his left shoulder flexion was to 160 degrees. The Veteran's range of motion for his abduction was to 160 degrees. Pain began at the end points for each movement. The Veteran was able to perform repetitive-use testing. There was no change to his range of motion. 

The Veteran's functional loss and/or functional impairment were described as less movement than normal, excess fatigability and pain on movement. No localized tenderness or guarding was found. The Veteran's muscle strength testing was normal. No ankylosis was noted. The Veteran's left rotator cuff tests were positive. No history of recurrent dislocation was found. His crank apprehension and relocations test was positive. No impairment to the clavicle or scapula or tenderness on palpation was found. The Veteran's cross-body adduction test was positive. The examiner noted that the degree of range of motion lost during pain or flare-up was approximately 20 degrees for all movements. 

The Veteran was also afforded a VA scar examination in December 2013. The scar on the Veteran's left shoulder was not painful or unstable. It was measured as 9 cm by .8cm. No limitation of function was found. 

VA treatment records, including one from February 2011, reflect complaints and treatment for left shoulder pain and the existence of a scar. The records do not contain a comprehensive evaluation such as those found in the VA examination reports and are not inconsistent with them. 

The Veteran and his representative contend that the Veteran's left shoulder indeed has limitation of motion, with additional limitation after repetitive use, other factors and flare-ups.
Analysis

The Board finds that a rating of 20 percent, but no higher, for the Veteran's left shoulder disability is warranted under DC 5201, limitation of motion of the arm. Under that DC, the minimum compensable rating that can be assigned for a minor extremity is 20 percent. A 20 percent rating is warranted when motion of the minor arm is limited to shoulder level or when motion of the minor arm is limited to the midway between the side and shoulder level. A 30 percent rating is warranted when motion of the minor arm is limited to 25 degrees from the side. 38 C.F.R. § 4.71a, DC 5201. 

Upon review of the evidence of record, there is evidence of limited motion and painful motion. The provisions of 38 C.F.R. § 4.59 establish that a veteran is entitled to a minimum compensable evaluation for painful motion. Burton, 25 Vet. App. at 1. The November 2011 VA examiner noted that the Veteran had objective evidence of decreased motion and subjective evidence of pain. He also noted the Veteran's difficulty to reach over his head. The December 2013 VA examiner noted functional loss and/or functional impairment as less movement than normal, excess fatigability and pain on movement. It was also reported that the Veteran's flare-ups could decrease his range of motion approximately 20 degrees, indicating that the Veteran's pain may at times result in additional functional loss beyond that objectively demonstrated. See 38 C.F.R. §§ 4.40, 4.45; DeLuca, 8 Vet. App. at 204-7. 

Resolving reasonable doubt in the Veteran's favor, entitlement to a 20 percent rating, the minimum compensable rating under DC 5201, for the Veteran's service-connected left shoulder disability has been shown. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

Although a higher 20 percent rating is warranted, an even higher 30 percent rating is not warranted for limitation of motion of the left shoulder under DC 5201. The range of motion measurements have not actually been shown to be at the compensable level. Only after considering painful motion and other factors, and resolving reasonable doubt in the Veteran's favor, does the Board find that the 20 percent rating is warranted. Because the evidence does not show that the left shoulder has been limited to 25 degrees from the side, a higher rating is not warranted.

The evidence does also not show that the Veteran's left shoulder has been ankylosed or that he has experienced impairment of the humerus. Impairment of the major clavicle or scapula has also not been shown at any point during the appeal. Therefore, a rating in excess of the now assigned 20 percent rating is not warranted under DCs 5200, 5202 and 5203. 

The Board notes the Veteran has a residual surgical scar on his left shoulder. In the March 2011 examination, it was reported that the scar was not painful, there was no skin breakdown and that it was 9.0 cm by 1.0 cm. The November 2011 examination report also shows that the scar was not painful, that it was 8 cm by 0.5 cm, and that there was no limitation of motion or function. Also, the December 2013 VA examination report reflects that the Veteran's scar was not painful or unstable and that there was no limitation of function, and that it measured 9 cm by .8 cm. 

Specifically, to warrant a 10 percent rating for the scar under DC 7801, the scar must be deep or cause limitation of motion and exceed 6 square inches (39 square centimeters). 38 C.F.R. § 4.118 (2014). Under DC 7802, a compensable evaluation requires a superficial scar exceeding 144 square inches. Id. A 10 percent rating may be assigned for a superficial scar that is painful or unstable under DCs 7803 and 7804. Id.

As the findings in the examination reports do not reveal findings consistent with a compensable evaluation under any relevant scar DC, a separate compensable rating is not warranted. The scar does not measure large enough and at three separate examinations, the scar was found to not be painful, which the Board finds to be probative of its effects.


Other Considerations

The above determination is based upon consideration of applicable rating provisions. It should also be pointed out that there is no showing that the Veteran's left shoulder disability has reflected so exceptional or unusual a disability picture as to warrant the assignment of any higher evaluation on an extraschedular basis. See 38 C.F.R. § 3.321(b)(1). The symptoms of the Veteran's left shoulder disability (including painful limitation of motion with other factors, and a noncompensable scar) have been accurately reflected by the schedular criteria. Without sufficient evidence reflecting that the Veteran's disability picture is not contemplated by the rating schedule, referral for a determination of whether the Veteran's disability picture requires the assignment of an extraschedular rating is not warranted. See Thun v. Peake, 22 Vet. App. 111, 115-16 (2008).

Moreover, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual condition fails to capture all the service-connected disabilities experienced. However, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple service-connected conditions. Thus, no basis for referring the case for an extraschedular consideration is presented in this case. 

As a final matter, the Board acknowledges that in Rice v. Shinseki, 22 Vet. App. 447 (2009), it was held that a claim for a total disability rating based on individual unemployability (TDIU) is part of an increased rating claim when such is raised by the record. The evidence reflects that the Veteran is employed. Accordingly, a TDIU claim has not been raised, and no action pursuant to Rice is necessary.



ORDER

A 20 percent disability rating, but no higher, for a left shoulder disability is granted, subject to the laws and regulations governing the payment of monetary awards.




____________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs