﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 200224-66442
DATE: December 31, 2020

ORDER

Entitlement to an initial compensable disability rating for bilateral hearing loss is denied.

Entitlement to an initial disability rating in excess of 10 percent for tinnitus is denied.

FINDINGS OF FACT

1. The Veteran’s service-connected bilateral hearing loss was no worse than Level I impairment of each ear.

2. Throughout the rating period, the Veteran has been in receipt of a rating of 10 percent for tinnitus, which is the maximum schedular rating for that disability, and all manifestations of the tinnitus are adequately considered under his schedular ratings.

CONCLUSIONS OF LAW

1. The criteria for a compensable rating for bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.85, 4.86, Diagnostic Code (DC) 6100.

2. The criteria for entitlement to an initial rating in excess of 10 percent for tinnitus have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.400, 4.3, 4.7, 4.14, 4.21, 4.87, Diagnostic Code 6260, 8045-8100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the Marine Corps from June 1981 to September 2001.

In the February 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

Neither the Veteran nor any representative has raised any issues with regard to the duty to notify or duty to assist as they pertain to the issues considered in this decision. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board... to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

The analysis in this decision focuses on the most relevant evidence and on what the evidence shows or does not show with respect to the issues denied in this decision. The Veteran should not assume that evidence that is not explicitly discussed in this decision has been overlooked. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (noting that the law requires only that reasons for rejecting evidence favorable to the claimant be addressed).

1. Entitlement to an initial compensable disability rating for bilateral hearing loss

The Veteran currently receives a noncompensable rating for his service-connected bilateral hearing loss. He contends that the “tone issue is significant to the point [he] cannot adequately hear phone or radio conversations of females or others.” See January 2020 Notice of Disagreement. He also contends that his hearing loss creates problems with work and his personal life and hearing aids have failed. See February VA Form 10182 Notice of Disagreement.

The Veteran received a rating decision awarding him service connection for bilateral hearing loss in September 2007, with an effective date on May 27, 2006, therefore, the appeal period begins on May 27, 2006.

The VA rating scheme for the evaluation of hearing loss provides ratings from noncompensable to 100 percent based on the results of controlled speech discrimination tests together with the results of puretone audiometry tests which average puretone thresholds at 1000, 2000, 3000 and 4000 Hertz. 38 C.F.R. § 4.85. The evaluation of hearing impairment applies a formula which is essentially a mechanical application of the VA Schedule for Rating Disabilities to numeric designations after audiology evaluations are rendered. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992).

An examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test. 38 C.F.R.§ 4.85(a).

Using Table VI in 38 C.F.R. § 4.85, the puretone average and speech recognition score are combined to give each ear a numeric designation for use on Table VII to determine the correct disability level. Alternatively, Table VIA uses only the puretone averages to give each ear a numeric designation.

The regulations have two provisions for evaluating veterans with certain patterns of hearing impairment that cannot always be accurately assessed under § 4.85 because the speech discrimination test may not reflect the severity of communicative functioning that veterans experience. 38 C.F.R. § 4.86(a) provides that if puretone thresholds in the specified frequencies of 1000, 2000, 3000, and 4000 Hertz are each 55 decibels or more, an evaluation can be based either on Table VI or Table VIA, whichever results in a higher evaluation. 

This provision corrects the fact that with a 55-decibel threshold level (the level at which speech becomes essentially inaudible) the high level of amplification needed to attempt to conduct a speech discrimination test would be painful to most people, and speech discrimination tests may therefore not be possible or reliable. See 64 Fed. Reg. 25209 (May 11, 1999). 

Additionally, 38 C.F.R. § 4.86(b) provides that if the puretone threshold is 30 decibels or less at 1000 Hertz and 70 decibels or more at 2000 Hertz, an evaluation can be based on either Table VI or Table VIA, whichever results in a higher numeric designation, and that designation will then be elevated to the next higher Roman numeral. 

This provision compensates for a pattern of hearing impairment that is an extreme handicap in the presence of any environmental noise, and a speech discrimination test conducted in a quiet room with amplification of sound does not always reflect the extent of impairment experienced in the ordinary environment. If the use of the word recognition score is not appropriate for the Veteran because of language difficulties, cognitive problems, inconsistent word recognition scores, etc., that make combined use of puretone average and word recognition scores inappropriate, the use of Table VIa is warranted.

In May 2006, the Veteran received an evaluation for his hearing impairment from a private provider. The Audiological evaluation revealed puretone thresholds, in decibels, as follows: 

 HERTZ

 1000 2000 3000 4000 AVG

RIGHT 5 0 45 55 26

LEFT

 5 0 5 45 14

Speech audiometry revealed speech recognition ability of 96 percent in the right ear and of 92 in the left ear.

The Board has considered the provisions of 38 C.F.R. § 4.86, which address exceptional patterns of hearing impairment, but the Veteran’s puretone thresholds during the appeal period summarized above do not conform to criteria listed in this regulation.

In July 2009, the Veteran was afforded an evaluation for his hearing impairment, but he failed to show up for his scheduled appointment.

In November 2019, the Veteran received an evaluation for his hearing impairment from a private provider. The Audiological evaluation revealed puretone thresholds, in decibels, as follows: 

 HERTZ

 1000 2000 3000 4000 AVG

RIGHT 5 10 50 60 31.25

LEFT

 5 5 30 60 25

Speech audiometry revealed speech recognition ability of 92 percent in the right ear and of 88 in the left ear.

The Board has considered the provisions of 38 C.F.R. § 4.86, which address exceptional patterns of hearing impairment, but the Veteran’s puretone thresholds during the appeal period summarized above do not conform to criteria listed in this regulation.

The Board has considered the provisions of 38 C.F.R. § 4.86, which address exceptional patterns of hearing impairment, but the Veteran’s puretone thresholds during the appeal period summarized above do not conform to criteria listed in this regulation.

The Veteran has argued that his hearing loss is more severe than was reflected by his assigned evaluations. Although the Veteran is competent to attest to his observations and laypeople may, in some circumstances, opine on questions of diagnosis and etiology, in this case, the Veteran is not competent to diagnose himself with a particular level of hearing impairment. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also 38 C.F.R. § 3.159(a)(1) (competent medical evidence means evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions). Specifically, the Veteran is competent to describe observable symptoms and impairments he experiences (e.g., diminished hearing and the use of hearing aids). However, as a lay person, he is unable to provide competent evidence as to the audiometry or measured level of his hearing loss to support a higher disability rating.

The Board acknowledges the Veteran’s complaints regarding the impact of his service-connected bilateral hearing loss on his daily activities. However, the assignment of disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometry evaluations are made. The Board also notes that the rating criteria does not provide for a compensable rating based on the use of hearing aids. 

There is no doubt as to the proper evaluations to assign, and thus no doubt to resolve in favor of the claimant. Lendenmann, 3 Vet. App. 345; 38 C.F.R. § 4.85, Tables VI, VIA, VII, DC 6100. The Board is bound by applicable laws and regulations promulgated by the VA. 38 U.S.C. § 7104(c); 38 C.F.R. § 20.101(a). Consideration of factors wholly outside the schedular rating criteria would constitute error as a matter of law. Massey v. Brown, 7 Vet. App. 204 (1994); Pernorio v. Derwinski, 2 Vet. App. 625 (1992).

In conclusion, the preponderance of the most probative evidence weighs against entitlement to a compensable rating for bilateral hearing loss. In reaching this conclusion, the Board considered the doctrine of reasonable doubt. However, as the preponderance of the evidence is against the claim, the doctrine does not apply, and the claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Entitlement to an initial disability rating in excess of 10 percent for tinnitus

The Veteran seeks a higher initial rating for tinnitus. The Veteran contends his tinnitus has become significantly louder and more debilitating. He indicated he was told in 1986 that it was not treatable, so he did not seek any treatment other than from VA, but it disrupts his sleep. See VA Form 10182 Notice of Disagreement.

The applicable rating period is from May 27, 2006, the effective date for the award of service connection for tinnitus, through the present. See 38 C.F.R. § 3.400.

Disability ratings are determined by the application of VA’s Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and, above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002).

When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” in all claims for increased ratings. Fenderson v. West, 12 Vet. App. 119, 126-27 (1999).

Turning to the evidence of record, in May 2006, the Veteran received an evaluation for his hearing loss and tinnitus. The examiner noted that the Veteran has a history of constant bilateral tinnitus and hearing loss, and now “the Veteran’s family is noticing more difficulty.” In November 2019, the Veteran was afforded a VA examination for his hearing and tinnitus condition. The Veteran reported he had ringing that was extremely noticeable since 1987, and it is constant and causes him difficulty sleeping. The examiner noted that the Veteran’s tinnitus impacts his ordinary conditions of daily life, including his ability to work. The Veteran’s tinnitus impacts his ability to sleep and concentrate. 

The Veteran’s tinnitus is rated under 38 C.F.R. § 4.87, Diagnostic Code 6260. Diagnostic Code 6260 provides a maximum schedular rating of 10 percent for tinnitus, whether the ringing is perceived as being in one ear, both ears, or in the head. 38 C.F.R. § 4.87, Diagnostic Code 6260, Note 2.

Thus, the Veteran’s tinnitus has been assigned the maximum schedular rating available under 38 C.F.R. § 4.87, Diagnostic Code 6260, throughout the rating period, and any appeal for a higher schedular rating must be denied.

Extraschedular

The issue of consideration of an extraschedular rating was raised by the November 2019 VA examination and December 2019 Notice of Disagreement. The Veteran reported his symptoms impact his ordinary conditions of daily living because he has problems sleeping and concentrating.

Consideration of an extraschedular rating requires a three-step inquiry. The first question is whether the schedular rating criteria adequately contemplate the veteran’s disability picture. If the schedular evaluation does not contemplate the level of disability and symptomatology shown and is found inadequate, then the second inquiry is whether the exceptional disability picture exhibits other related factors, such as marked interference with employment or frequent periods of hospitalization. See Thun v. Peake, 22 Vet. App. 111 (2008). The first Thun element compares a claimant’s symptoms to the rating criteria, while the second addresses the resulting effects of those symptoms. Thus, the first and second Thun elements, although interrelated, involve separate and distinct analyses. Yancy v. McDonald, 27 Vet. App. 484, 495 (2016). If the veteran’s disability picture meets the second inquiry, then the third step is to refer the case to the Director of Compensation Services to determine whether an extraschedular rating is warranted. See Thun, 22 Vet. App. 111.

In regard to the first element, comparison of the Veteran’s symptoms and associated functional impairment does not show that the rating criteria are inadequate to describe his disability picture. The Veteran’s tinnitus is rated under Diagnostic Code 6260. The record shows that he has complaints and findings of problems sleeping and concentrating. Diagnostic Code 6260 does not specifically list all the Veteran’s symptoms. However, the Veteran has separately been granted service connection for traumatic brain injury (TBI), mild, with residual migraine headaches, under Diagnostic Code 8045-8100, which is rated at 30 percent. 

The Board notes that the Veteran’s TBI and migraines are rated under hyphenated diagnostic codes. Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. Here, the Veteran’s TBI is rated under Diagnostic Code 8045 because he sustained head trauma. Diagnostic Code 8100 provides the duration of the Veteran’s migraines.

Under Diagnostic Code 8045, the rating criteria for residuals of TBI include physical dysfunction including hearing loss, tinnitus, and trouble concentrating. There is no indication in the record that the sleep impairment, or the difficulty concentrating caused by the tinnitus is distinguishable from the symptoms caused by the service connected TBI with residual migraines, such that it constitutes a separate manifestation. As such assigning a rating, to include on an extraschedular basis, for the sleep impairment and difficulty concentrating caused by the service-connected tinnitus would constitute impermissible pyramiding. See 38 C.F.R. § 4.14; see also Esteban v. Brown, 6 Vet. App. 259 (1994). Therefore, a higher or separate rating is not warranted based on the sleep impairment the Veteran reported at the November 2019 VA examination and December 2019 Notice of Disagreement.

Therefore, the Veteran’s tinnitus manifestations are reasonably contemplated by Diagnostic Code 6260 and Diagnostic Codes 8045-8100. The threshold issue under Thun is thus not met, and further consideration of an extraschedular rating is not warranted.

The Board therefore finds no basis for awarding a rating in excess of 10 percent for the Veteran's tinnitus at any time during the rating period. As the preponderance of the evidence is against the assignment of a higher initial rating, the benefit-of-the-doubt doctrine is not for application, and the appeal must be denied. 38 U.S.C. § 5107(b); see also Gilbert, 1 Vet. App. at 49.

 

 

MICHAEL MARTIN

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Quist, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.